IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2013 Term

_____

No. 11-1085

_____

BROOKE B.,
Petitioner

v.

DONALD RAY C., II,
Respondent

**FILED**
**January 24, 2013**
released at 3:00 p.m.
**RORY L. PERRY II, CLERK**
**SUPREME COURT OF
APPEALS**

_____

Appeal from the Circuit Court of Kanawha County
The Honorable Paul Zakaib, Jr., Judge
Civil Action No. 11-MISC-136

REVERSED

_____

Submitted: January 16, 2013
Filed: January 24, 2013

Andrew S. Nason, Esq.
Pepper & Nason
Charleston, West Virginia
Noelle A. Starek, Esq.
Charleston, West Virginia
Counsel for the Petitioner

Ariella G. Silberman, Esq.
Kay, Casto & Chaney, PLLC
Charleston, West Virginia
Guardian *ad litem* for A.C.

Mark A. Swartz, Esq.
Allyson H. Griffith, Esq.
Swartz Law Offices
Saint Albans, West Virginia
Counsel for the Respondent

JUSTICE KETCHUM delivered the Opinion of the Court.

CHIEF JUSTICE BENJAMIN, deeming himself disqualified, did not participate.

JUDGE J. D. BEANE, sitting by temporary assignment.

SYLLABUS BY THE COURT

1.      "The standard of appellate review of a circuit court's order granting relief through the extraordinary writ of prohibition is *de novo*."  Syllabus Point 1, *Martin v. West Virginia Div. of Labor Contractor Licensing Bd.*, 199 W.Va. 613, 486 S.E.2d 782 (1997).

2.      "Prohibition lies only to restrain inferior courts from proceeding in causes over which they have no jurisdiction, or, in which, having jurisdiction, they are exceeding their legitimate powers and may not be used as a substitute for writ of error, appeal or certiorari."  Syllabus Point 1, *Crawford v. Taylor*, 138 W.Va. 207, 75 S.E.2d 370 (1953).

3.      "Cases involving children must be decided not just in the context of competing sets of adults' rights, but also with a regard for the rights of the child(ren)."  Syllabus Point 7, *In re Brian D.*, 194 W.Va. 623, 461 S.E.2d 129 (1995).

4.      "Pursuant to the plain language of W.Va. Code § 44–10–3(a) (2006) (Supp.2007), the circuit court or family court of the county in which a minor resides may appoint a suitable person to serve as the minor's guardian.  In appointing a guardian, the court shall give priority to the minor's mother or father.  'However, in every case, the competency and fitness of the proposed guardian and the welfare and best interests of the minor shall be given precedence by the court when appointing the guardian.' W.Va. Code § 44–10–3(a)."  Syllabus Point 6, *In re Abbigail Faye B.*, 222 W.Va. 466, 665 S.E.2d 300 (2008).

i

5.    "In exceptional cases and subject to the court's discretion, a psychological parent may intervene in a custody proceeding brought pursuant to W.Va. Code § 48-9-103 (2001) (Repl.Vol. 2004) when such intervention is likely to serve the best interests of the child(ren) whose custody is under adjudication."  Syllabus Point 4, *In re Clifford K.*, 217 W.Va. 625, 619 S.E.2d 138 (2005).

6.    *W.Va. Code* §§ 51-2A-2(a)(17) [2012] and 44-10-3(a) [2006] clearly and unambiguously grant a family court the subject matter jurisdiction to hear questions concerning guardianship of a child.

7.    *W.Va. Code* §§ 51-2A-2(a)(6) [2012] and 48-9-103 [2001] clearly and unambiguously grant a family court the subject matter jurisdiction to consider establishing a parenting plan, or to otherwise allocate custodial responsibility or decision-making responsibility, to someone who intervenes in an action alleging they are a psychological parent.

8.    Jurisdiction is a court's inherent power to decide a case; venue, however, designates the particular county in which a court having jurisdiction may properly hear and determine the case.

9.    "A man may live in several different places but he can have only one domicile.  Domicile is a place a person intends to retain as a permanent residence and go back to ultimately after moving away."  Syllabus Point 2, *Shaw v. Shaw*, 155 W.Va. 712, 187 S.E.2d 124 (1972).

ii

10.     "Because a determination of residency depends on the intent of the parties, it is typically a question of fact[.]"  Syllabus Point 5, in part, *Farmers Mut. Ins. Co. v. Tucker*, 213 W.Va. 16, 576 S.E.2d 261 (2002).

11.     It is not for this Court arbitrarily to read into a statute that which it does not say.  Just as courts are not to eliminate through judicial interpretation words that were purposely included, we are obliged not to add to statutes something the Legislature purposely omitted.

12.     *W.Va. Code* § 44-10-3(a) [2006] places jurisdiction and venue of an infant guardianship action in the West Virginia county in which a minor resides.  It is the minor's residency alone that controls, and not the residency of any other person such as a parent, guardian, or other person with custody or control of the minor.  A determination of the minor's residency is typically a question of fact.

Ketchum, Justice:

Since the founding of our State, this Court has abided by the principle that issues of child custody are to revolve around the best interests of the child. This appeal demonstrates what happens when sight is lost of that polar star principle.

The petitioner in this appeal contends that she is the psychological parent of a child. The child's biological mother has virtually no contact with the child. After the child's biological, custodial father (the respondent) pleaded guilty to several crimes and anticipated being incarcerated, the petitioner filed a motion to intervene in an existing family court action and sought either shared parenting with the father, or guardianship of the child if the father was sentenced to prison.

Instead of responding to the petitioner's factual contentions, the biological father petitioned the circuit court for a writ of prohibition. The father's current counsel claimed that the family court lacked subject matter jurisdiction to consider a motion for either shared parenting or guardianship. The circuit court granted the writ of prohibition and halted the family court's consideration of the petitioner's motion.

We reverse the circuit court's order granting the writ of prohibition, and find that the family court plainly had subject matter jurisdiction to consider the petitioner's motion.

1

**I.**
**FACTUAL AND PROCEDURAL BACKGROUND**

On February 1, 2003, the child at the center of this case – who we refer to as "A.C." – was born. Her biological parents are Leslie F. and the respondent, Donald C. In a paternity action filed in the Family Court of Cabell County in 2004, Donald was adjudicated as the biological father, and was granted primary physical and legal custody of A.C. Although Leslie was afforded visitation rights, she has had no meaningful relationship with the child and rarely sees her. One party asserts the biological mother last visited the child in 2007.[1]

Donald had discovered that he was A.C.'s father when she was 20 months old. At the time, he was dating and living with the petitioner, Brooke B. Brooke asserts that after Donald took custody of A.C., and with the assent and encouragement of Donald, she began performing more than half of the parenting tasks for A.C. including financially supporting, housing, feeding, clothing, bathing, dressing and teaching A.C. For the next seven years, Brooke had a continuous and uninterrupted relationship with the child. She took the child to school, to doctor's appointments, to haircuts, and to school and extracurricular activities. The child's guardian *ad litem* states that A.C. "perceives

---

[1] The Family Court of Cabell County's paternity and custody order states, in part:
> [T]he parties agreed to cooperate in facilitating the Respondent [Leslie's] parenting time with the minor child so long as Respondent's parenting time occurs at a safe venue. . . .
>
> [B]ased upon the parties['] agreement . . . Petitioner Donald . . . shall pay unto the Respondent Leslie F[.] the sum of $400.00 per month as child support until further Order of the Court regardless of the current parenting arrangement.

Brooke . . . as her mother," and a psychologist reported that Brooke "fulfills the accepted description of a psychological parent."[2]

In 2009, Donald and Brooke ended their relationship. Brooke moved out of his house and into her own home in Kanawha County. However, through 2009 and 2010, A.C. allegedly spent the majority of her time living in Brooke's home, and Brooke continued to perform those parenting duties she had been performing throughout A.C.'s life. A.C. was enrolled in a private school in Kanawha County, had numerous friends in Kanawha County, and participated in extracurricular activities like plays and Girl Scouts in Kanawha County.

On January 6, 2011, Donald pleaded guilty to tax evasion and bank fraud in the United States District Court for the Southern District of West Virginia. His sentencing was scheduled for a later date, but he faced up to 35 years in prison. At approximately the same time, Donald refused to let A.C. stay at Brooke's house. Brooke

---

[2] We adopted the following definition of a "psychological parent" in Syllabus Point 3 of *In re Clifford K.*, 217 W.Va. 625, 619 S.E.2d 138 (2005):

> A psychological parent is a person who, on a continuing day-to-day basis, through interaction, companionship, interplay, and mutuality, fulfills a child's psychological and physical needs for a parent and provides for the child's emotional and financial support. The psychological parent may be a biological, adoptive, or foster parent, or any other person. The resulting relationship between the psychological parent and the child must be of substantial, not temporary, duration and must have begun with the consent and encouragement of the child's legal parent or guardian. . . .

3

alleges that Donald acted "to establish himself as a single parent performing the majority of parenting duties . . . to impress the federal court and decrease his sentencing."

Less than two weeks later, on January 18, 2011, Brooke filed a motion to intervene in Donald's paternity case in the Family Court of Cabell County. Brooke's motion asserted that she has been A.C.'s psychological mother since the child was 20 months old, and that the child lived with her in Kanawha County. Brooke asked the family court for a share of parenting duties, and for an order appointing Brooke as A.C.'s legal guardian while Donald was incarcerated. Copies of the motion were served on Donald and on the biological mother, Leslie F.

The Family Court of Cabell County, however, did not rule on Brooke's motion. Instead, the family court entered an order transferring the case to Kanawha County "because the Petitioner [Brooke] resides in Kanawha County and the minor child resided with the Petitioner in Kanawha County at the time of the filing of the petition."[3]

Shortly thereafter, Donald's attorney filed a motion to dismiss with the Family Court of Kanawha County. The motion did not challenge venue in Kanawha County. Donald's motion only asserted, as a matter of fact, that Donald was the primary caretaker of A.C. and that Brooke was not a psychological parent.

---

[3] The Family Court of Cabell County appears to have transferred the case pursuant to *W.Va. Code* § 48-24-101(a) [2002], which permits transfers of venue in paternity actions to a county where a party resides "if judicial economy requires."

4

At a hearing on February 11, 2011, the family court declined to grant Donald's motion to dismiss[4] because resolution of the fact-based motion would require the taking of evidence and testimony. A hearing to take testimony was scheduled for March 17th. In the meantime, the family court, "based upon an agreement of the parties," ordered Brooke and Donald to divide their custodial time with the child equally. The family court also ordered that A.C. not be removed from her private school in Kanawha County.

Shortly thereafter, Donald hired a new lawyer. The new lawyer filed a motion to continue the March 17th hearing, ostensibly because he would not have enough time to gather evidence and prepare for the hearing. The family court had a teleconference on the motion to continue on March 16th. Counsel for Brooke objected because two physicians had cleared their schedules to appear at the hearing. As a compromise, the family court ruled that the March 17th hearing would be continued except for the taking of testimony from the two physicians.

It is at this point that counsel for Donald initiated a detour away from consideration of the best interests of the child. On March 16, 2011, at 9:11 p.m., counsel for Donald faxed a new 45-page motion to dismiss to the family court judge. Counsel's new motion asserted that Brooke had never filed or served any formal petition, complaint, or summons on Donald, and therefore "[w]hatever fugitive papers have collected to create this misbegotten process must be stricken from the docket as of no

---

[4] An order memorializing the family court's ruling was entered on March 8, 2011.

jurisdictional consequence." Donald's motion further asserted that he had "primary physical and legal custody" of A.C., and that Donald and A.C. "reside in Putnam County, West Virginia and have lived there for many years." On these grounds, counsel for Donald claimed that the Family Court of Kanawha County did not have subject matter jurisdiction to hear Brooke's case.

On the morning of March 17th, the family court convened the hearing to do nothing more than take the testimony of the two physicians. A.C.'s biological mother, Leslie, appeared at the hearing (but reiterated she was not asking for custody of A.C.). At the outset, counsel for Donald orally asserted that the family court didn't have subject matter jurisdiction to do anything. Counsel for Brooke contended that Donald's lawyer was not truly making a jurisdiction argument but rather a venue argument. However, Brooke's counsel asserted that Donald's prior lawyer had orally but explicitly chosen Kanawha County as the better venue over Putnam County, and had waived any venue objections. The family court declined to rule on Donald's new motion to dismiss because the court had not had time to review the motion, and allowed the lawyers to examine and cross-examine the two physicians.

At the conclusion of the March 17th hearing, the family court set a hearing for May 9th to consider Donald's new motion to dismiss. Nonetheless, minutes after the conclusion of the family court hearing, at 11:26 a.m., counsel for Donald filed a petition seeking a writ of prohibition from the Circuit Court of Kanawha County. Donald's lawyer repeated his claims that the Family Court of Kanawha County lacked subject matter jurisdiction because A.C. "lived" and "resided" with her father in Putnam County,

6

and that Brooke had never filed a formal petition or complaint in Kanawha County sufficient to invoke the family court's jurisdiction. Donald also argued that the family court was not giving Donald's counsel adequate time to prepare for hearings. Donald therefore asked that the circuit court prohibit the family court from proceeding any further on Brooke's motion for relief.

In an order dated June 29, 2011, the circuit court granted Donald a writ of prohibition. The circuit court prohibited the family court from taking any further action on Brooke's motion. The circuit court determined that, as a matter of law, A.C.'s residence was identical to that of her father's in Putnam County. As such, the circuit court concluded that "the family and circuit courts of Putnam County have subject matter jurisdiction to entertain a petition for appointment of a guardian . . ; the Kanawha County Family Court does not."

Shortly thereafter, Donald – who by now was a resident of Boone County – appears to have filed a guardianship proceeding in the Family Court of Boone County. In that proceeding, on July 18, 2011, Donald had his mother (that is, A.C.'s paternal grandmother) appointed as guardian of the child.[5] According to the parties, A.C. now resides with her grandparents in Logan County.

---

[5] Brooke asserts that Donald's lawyer violated the *Rules of Practice and Procedure for Minor Guardianship Proceedings* [2009] in the Boone County action by omitting any mention of A.C.'s relationship with Brooke. Rule 3(a)(7) requires that a petition for the appointment of a guardian for a minor must contain a list of the "places where the minor has lived during the last five years . . . and present addresses of the persons with whom the minor lived during that period[.]" Rule 3(a)(8) requires the petitioner to describe "any past or current proceeding involving the minor's custody[.]"

Continued . . .

7

On September 21, 2011, Donald was sentenced to 51 months in prison by the federal district court.

Brooke now appeals the Circuit Court of Kanawha County's June 29, 2011, order granting a writ of prohibition.

**II.**
**STANDARD OF REVIEW**

"The standard of appellate review of a circuit court's order granting relief through the extraordinary writ of prohibition is *de novo*." Syllabus Point 1, *Martin v. West Virginia Div. of Labor Contractor Licensing Bd.*, 199 W.Va. 613, 486 S.E.2d 782 (1997). We therefore apply the same guidelines as the circuit court relied upon in considering whether to the issue a writ of prohibition.

*W.Va. Code* § 53-1-1 [1923] provides as follows:

> The writ of prohibition shall lie as a matter of right in all cases of usurpation and abuse of power, when the inferior court has not jurisdiction of the subject matter in controversy, or, having such jurisdiction, exceeds its legitimate powers.

Brooke asserts that Donald's lawyer failed to advise the family court of the Kanawha County proceedings, or that A.C. lived in Brooke's house in Kanawha County for the two years preceding the Boone County action.

On February 14, 2012, the Family Court of Boone County granted Brooke's motion to intervene in the guardianship action. The family court ordered that Brooke be permitted "visitation" with A.C., and during summer vacation 2012, ordered that Brooke receive 50/50, week on/week off, shared parenting. The family court also ordered alternating weekend shared parenting after A.C. returned to school in the fall of 2012.

On July 17, 2012, counsel for Donald filed a petition for a writ of prohibition with the Circuit Court of Boone County in an attempt to halt or to circumvent the family court's orders. The circuit court has not yet ruled on the petition.

8

Similarly, we have oft stated that a writ of "[p]rohibition lies only to restrain inferior courts from proceeding in causes over which they have no jurisdiction, or, in which, having jurisdiction, they are exceeding their legitimate powers and may not be used as a substitute for writ of error, appeal or certiorari." Syllabus Point 1, *Crawford v. Taylor*, 138 W.Va. 207, 75 S.E.2d 370 (1953).

Utilizing those standards of review, we examine the circuit court's order determining that the Family Court of Kanawha County had no subject matter jurisdiction to consider Brooke's motion seeking guardianship or shared parenting of A.C.

### III.
### ANALYSIS

For a century-and-a-half, the courts of this State have been guided by the fundamental rule that, when addressing custody issues involving children, the best interests of the child trump all other considerations. It is the polar star that steers all discretion.[6] As we said in 1925, "we must not lose sight of the rule that obtains in most

---

[6]*See, e.g.*, *Kessel v. Leavitt*, 204 W.Va. 95, 174, 511 S.E.2d 720, 799 (1998) ("Superior to any rights of parents to the custody of their own children, however, is the overriding consideration of the child's best interests. Thus, the natural right of parents to the custody of their children is always tempered with the courts' overriding concern for the well-being of the children involved."); Syllabus Point 7, *In re Brian D.*, 194 W.Va. 623, 461 S.E.2d 129 (1995) ("Cases involving children must be decided not just in the context of competing sets of adults' rights, but also with a regard for the rights of the child(ren)."); *Michael K.T. v. Tina L.T.*, 182 W.Va. 399, 405, 387 S.E.2d 866, 872 (1989) ("[T]he best interests of the child is the polar star by which decisions must be made which affect children."); Syllabus Point 2, *State ex rel. Lipscomb v. Joplin*, 131 W.Va. 302, 47 S.E.2d 221 (1948) ("In a contest involving the custody of an infant the welfare of the child is the polar star by which the discretion of the court will be guided."); Syllabus,

Continued . . .

9

jurisdictions at the present day, that the welfare of the child is to be regarded more than the technical legal rights of the parent." *Connor v. Harris*, 100 W.Va. 313, 317, 130 S.E. 281, 283 (1925).

In the instant case, the best interests of the child appear to have been wholly disregarded. Brooke's initial motion (for guardianship or an allocation of custodial responsibility) facially sought what was best for A.C., and raised questions of fact that necessitated the taking of evidence. However, Donald's petition for a writ of prohibition sought to circumvent those questions of fact, and – as the family court noted – "seems to . . . throw everything against the wall and pray that something sticks." Nowhere in Donald's filings do we perceive any consideration of what is best for A.C.

The circuit court – at the urging of Donald's counsel – granted a writ of prohibition after concluding that the family court had no subject matter jurisdiction. On appeal, Brooke asserts that the circuit court's decision was wrong. After consideration of the statutes creating the family court's authority, we agree with Brooke that it is clear that

_____

*State ex rel. Palmer v. Postlethwaite*, 106 W.Va. 383, 145 S.E. 738 (1928) ("In [a] contest over the custody of an infant, the welfare of the child is the polar star by which the discretion of the court is to be guided."); *Green v. Campbell*, 35 W.Va. 698, 702, 14 S.E. 212, 214 (1891) ("[T]he welfare of the infant is the polar star by which the court is to be guided in the exercise of its discretion; and the court . . . is not bound by any mere legal right of parent or guardian, but is to give it due weight as a claim founded on human nature, and generally equitable and just."); *Rust v. Vanvacter*, 9 W.Va. 600, 612-13 (1866) ("the court will exercise its discretion according to the facts, consulting the wishes of the minor, if of years of discretion; if not, exercising its own judgment as to what will be best calculated to promote the interests of the child."), *citing Armstrong v. Stone*, 9 Gratt 102, 107 (Va. 1852) ("the court will exercise its discretion according to the facts, consulting the wishes of the minor, if of years of discretion; if not, exercising its own judgment as to what will be best calculated to promote the interests of the child.").

10

the circuit court erred. Unquestionably, the Family Court of Kanawha County had jurisdiction to hear Brooke's motion for guardianship or shared parenting responsibility.

The subject matter jurisdiction of the family courts over guardianship proceedings and proceedings allocating custodial responsibility derives from various statutes.

As to guardianship proceedings, *W.Va. Code* § 51-2A-2(a)(17) [2012] gives a family court "jurisdiction over the following matters: . . . All proceedings relating to the appointment of guardians or curators of minor children[.]" Similarly, *W.Va. Code* § 44-10-3(a) [2006] states that a "family court of the county in which the minor resides . . . may appoint as the minor's guardian a suitable person."[7] *See also*, Syllabus Point 6, in part, *In re Abbigail Faye B.*, 222 W.Va. 466, 665 S.E.2d 300 (2008) ("Pursuant to the plain language of W.Va. Code § 44–10–3(a) (2006) (Supp.2007), the circuit court or family court of the county in which a minor resides may appoint a suitable person to serve as the minor's guardian.").

As to shared parenting and "custody," *W.Va. Code* § 51-2A-2(a)(6) [2012] gives a family court "jurisdiction over the following matters: . . . All actions for the establishment of a parenting plan or other allocation of custodial responsibility or

---

[7] The statute also confers concurrent jurisdiction over infant guardianship proceedings to circuit courts. Rule 2(a) of the *Rules of Practice and Procedure for Minor Guardianship Proceedings* [2009] clarifies the statute and states, in part:

> (a) *Jurisdiction*. 1) Circuit courts and family courts have concurrent subject matter jurisdiction over minor guardianship proceedings, whether involving guardianship of the person or estate of a minor, or both[.]

11

decision-making responsibility for a child[.]" Non-parents, such as petitioner Brooke, are specifically allowed to seek an allocation of custodial responsibility under *W.Va. Code §* 48-9-103(b) [2001], which provides in part that:

> In exceptional cases the court may, in its discretion, grant permission to intervene to other persons . . . whose participation in the proceedings under this article it determines is likely to serve the child's best interests. The court may place limitations on participation by the intervening party as the court determines to be appropriate.

We specifically found, in Syllabus Point 4 of *In re Clifford K.*, 217 W.Va. 625, 619 S.E.2d 138 (2005), that the statute authorizes a psychological parent to intervene in a custody proceeding:

> In exceptional cases and subject to the court's discretion, a psychological parent may intervene in a custody proceeding brought pursuant to W.Va. Code § 48-9-103 (2001) (Repl.Vol.2004) when such intervention is likely to serve the best interests of the child(ren) whose custody is under adjudication.

"Where the language of a statute is free from ambiguity, its plain meaning is to be accepted and applied without resort to interpretation." Syllabus Point 2, *Crockett v. Andrews*, 153 W.Va. 714, 172 S.E.2d 384 (1970). "A statutory provision which is clear and unambiguous and plainly expresses the legislative intent will not be interpreted by the courts but will be given full force and effect." Syllabus Point 2, *State v. Epperly*, 135 W.Va. 877, 65 S.E.2d 488 (1951).

These statutes plainly express a legislative intent to vest subject matter jurisdiction in the family courts to consider any action that concerns the custody and guardianship of a child. *W.Va. Code* §§ 51-2A-2(a)(17) and 44-10-3(a) clearly and

unambiguously grant a family court the subject matter jurisdiction to hear questions concerning guardianship of a child. *W.Va. Code* §§ 51-2A-2(a)(6) and 48-9-103 clearly and unambiguously grant a family court the subject matter jurisdiction to consider establishing a parenting plan, or to otherwise allocate custodial responsibility or decision-making responsibility, to someone who intervenes in an action alleging they are a psychological parent. The circuit court's order finding the family court was without subject matter jurisdiction was, therefore, plainly in error.

The arguments by Donald's counsel confuse jurisdiction with venue. Jurisdiction is a court's inherent power to decide a case; venue, however, designates the particular county in which a court having jurisdiction may properly hear and determine the case. Syllabus Point 9, *Hinerman v. Daily Gazette Co., Inc*., 188 W.Va. 157, 423 S.E.2d 560 (1992) ("Jurisdiction implies or imports the power of the Court, venue the place of the action."); *Sidney C. Smith Corp. v. Dailey*, 136 W.Va. 380, 388, 67 S.E.2d 523, 527 (1951). Donald essentially argues that venue did not lie in Kanawha County, but rather was vested in Putnam County where he then resided.

Donald's venue argument ignores Brooke's request for a parenting plan and a share of custodial and decision-making responsibility. Instead, it focuses solely on her request for guardianship. Donald's argument starts with a novel interpretation of the guardianship statute, *W.Va. Code* § 44-10-3(a), which creates jurisdiction in the "family court of the county in which the minor resides[.]" Donald argues that, as a matter of law, "the county in which the minor resides" is identical to that of a custodial parent. The basis for his position is *W.Va. Code* § 48-9-602 [2001], which states, in part:

13

> Solely for the purposes of all other state and federal statutes which require a designation or determination of custody, a parenting plan shall designate the parent with whom the child is scheduled to reside the majority of the time as the custodian of the child. However, this designation shall not affect either parent's rights and responsibilities under a parenting plan.

In 2006, the Family Court of Cabell County designated Donald as the custodian of A.C. He argues, therefore, that the child, as a matter of law, resided with him wherever he might live.

We reject Donald's suggested interpretation of our laws.

First, *W.Va. Code* § 48-9-602 applies only to "statutes which require a designation or determination of custody[.]" There is nothing in the guardianship statute that requires a court to first designate or determine the custody of a child before then determining who may be guardian of the child.[8] Accordingly, *W.Va. Code* § 44-10-3(a) is not one of the statutes envisaged by the Legislature when it crafted *W.Va. Code* § 48-9-602.

Second, the Legislature's choice of words in *W.Va. Code* § 44-10-3(a) and *W.Va. Code* § 48-9-602 indicates that the Legislature was aware circumstances could

---

[8] The "state and federal statutes" likely referred to in *W.Va. Code* § 48-9-602 include the Internal Revenue Code, 26 U.S.C. § 152 [2008] (which allows a custodial parent to claim a dependent deduction); the Food Stamp Program, 7 U.S.C. § 2015 [2008] (which requires a custodial parent to cooperate with state child support agencies); federal criminal statutes relating to parental kidnapping, 18 U.S.C. § 1204 [2003]; federal regulations issued on Veterans' Benefits, 38 CFR 3.24, 3.57, and 3.850, and Social Security, 42 U.S.C. § 1396r-1a [2000]; and statutes regarding finding a missing child and reuniting the child with their legal custodian, 42 USC § 5773 [2008] and § 5775 [1999]. *See Kimpel v. Kimpel*, 122 Wash.App. 729, 734 n.1, 94 P.3d 1022, 1024 n.1 (2004).

arise where a minor had more than one residence. In *W.Va. Code* § 44-10-3(a), the Legislature based a court's jurisdiction and venue in any county in which a minor has a residence, or "resides." The verb "'[t]o reside' and its corresponding noun *residence* are chameleon-like expressions, which take their color of meaning from the context in which they are found. The word 'residence' has been described as being 'like a slippery eel, and the definition which fits one situation will wriggle out of our hands when used in another context or in a different sense.'" *Farmers Mut. Ins. Co. v. Tucker*, 213 W.Va. 16, 21, 576 S.E.2d 261, 266 (2002) (citation omitted). And in *W.Va. Code* § 48-9-602, the Legislature required any parenting plan to specify where "the child is scheduled to reside *the majority of the time*;" the statute does not resolve whether the child resides in other places, but rather implies that a child can reside in multiple places.[9]

---

[9] In the context of insurance, there is a bounty of case law discussing the numerous "residences" of a child of divorced or separated parents, or children who have temporarily left their parents' home to pursue an education, job, medical treatment, or the armed forces:

> Numerous other cases have found a child of divorced or separated parents -- even though living primarily under the roof of only one parent -- was a "resident" of both parents' "households" for purposes of insurance coverage. Courts note that children often leave belongings at both homes, have a room or area of their "own" in each home, and until the child expresses another intent, generally hold that the child is a resident of both homes. . . .
>
> Another common class of cases where courts usually find coverage involves children who have temporarily left their parents' insured house to pursue an education, a job, extensive medical treatment, or to join the armed forces. These individuals often establish a residence a substantial distance from the insured house, and maintain that residence for an extended period. When the facts establish that the

Continued . . .

15

It is an axiom in the law that residence and domicile are not synonymous, and that a person "may have several residences, but only one domicile." *Lotz v. Atamaniuk*, 172 W.Va. 116, 118, 304 S.E.2d 20, 23 (1983). This Court said in Syllabus Point 2 of *Shaw v. Shaw*, 155 W.Va. 712, 187 S.E.2d 124 (1972) that a person "may live in several different places but [she] can have only one domicile. Domicile is a place a person intends to retain as a permanent residence and go back to ultimately after moving away." *Black's Law Dictionary* says that residence must be distinguished from domicile:

> As "domicile" and "residence" are usually in the same place, they are frequently used as if they had the same meaning, but they are not identical terms, for a person may have two places of residence, as in the city and country, but only one domicile. Residence means living in a particular locality, but domicile means living in that locality with intent to make it a fixed and permanent home.

*Farmers Mut. Ins. Co. v. Tucker*, 213 W.Va. at 21, 576 S.E.2d at 266 (*quoting Black's Law Dictionary* 1309 (6th ed.1990))

We noted in Syllabus Point 5 of *Farmers Mut. Ins. Co.*, *supra*, that "[b]ecause a determination of residency depends on the intent of the parties, it is typically a question of fact[.]" Accordingly, since *W.Va. Code* § 44-10-3(a) places jurisdiction and venue of an infant guardianship action in *any* West Virginia county in which a minor resides, where the minor resides is generally a question of fact.

---

> child continues to call and treat their parents' house as "home," leaving their belongings there and returning when possible, courts usually find that the child is an insured "resident" of their parents' "household." . . .

*Farmers Mut. Ins. Co. v. Tucker*, 213 W.Va. at 22-23, 576 S.E.2d at 267-68 (citations and footnotes omitted).

16

Third, *W.Va. Code* § 44-10-3(a) vests jurisdiction in the county "in which the *minor* resides;" it does not mention anything about where the custodial parent of the minor might reside. We reject the respondent's invitation that we add jurisdictional limitations to *W.Va. Code* § 44-10-3(a) that the Legislature intentionally omitted.

> It is not for this Court arbitrarily to read into [a statute] that which it does not say. Just as courts are not to eliminate through judicial interpretation words that were purposely included, we are obliged not to add to statutes something the Legislature purposely omitted.

*Banker v. Banker*, 196 W.Va. 535, 546-47, 474 S.E.2d 465, 476-77 (1996). The Legislature purposely created jurisdiction in courts where the minor resides. Our *Rules of Practice and Procedure for Minor Guardianship Proceedings* similarly specify that venue over a child's guardianship proceeding is determined solely with reference to the child and no one else. Rule 2(b) states:

> (b) *Venue*. A petition for appointment of a minor guardian shall be filed and heard in the county where the minor resides; or if the minor is a nonresident of the state, a county in which the minor has an estate. Any subsequent proceedings shall be heard in the county in which the guardian was appointed.

In summary, we believe that our infant guardianship statute is clear: *W.Va. Code* § 44-10-3(a) places jurisdiction and venue of an infant guardianship action in the West Virginia county in which a minor resides. It is the minor's residency alone that controls, and not the residency of any other person such as a parent, guardian, or other person with custody or control of the minor. A determination of the minor's residency is typically a question of fact.

17

The record shows that Brooke alleged that the child, A.C., resided with her at her home in Kanawha County. If this is true, then under *W.Va. Code* § 44-10-3(a) venue lies with the Family Court of Kanawha County to ascertain whether Brooke is competent and fit to be the minor's guardian, and whether it is in the minor's welfare and best interests.

## IV.
## CONCLUSION

As set forth above, the Family Court of Kanawha County plainly had subject matter jurisdiction to consider the petitioner's arguments. The Circuit Court of Kanawha County erred in issuing its June 29, 2011, order granting a writ of prohibition. The order is therefore reversed.

With the dissolution of the circuit court's prohibition order, the Family Court of Kanawha County should expeditiously proceed to resolve the parties' motions. We understand from the parties that a competing action involving the custody, parenting responsibilities, and/or guardianship of A.C. is pending in the Family Court of Boone County. This competing action was filed after petitioner Brooke filed her motion to intervene (requesting shared parenting or guardianship) that was transferred to the Family Court of Kanawha County. Pursuant to Rule 19(f) of the *Rules of Practice and Procedure for Family Court* [2007],[10] the Family Court of Kanawha County should

---

[10] Rule 19(f) of the *Rules of Practice and Procedure for Family Court* states:

Continued . . .

promptly order the Boone County action (and any other subsequently filed actions) transferred to Kanawha County.

The family court should then quickly resolve the questions raised by the parties' motions, including determining A.C.'s residency at the time Brooke's motion was filed and thereby whether venue is proper in Kanawha County. If so, the family court should then expeditiously resolve the shared parenting and guardianship issues raised by Brooke's motion.

Finally, the Clerk of the Court is directed to issue the mandate forthwith.

Reversed.

---

(f) *Consolidation of simultaneous proceedings.* When two or more family court actions between the same two parties are pending before different family court judges, the court in which the first action was commenced shall order all of the actions transferred to it or any other family court in which such action is pending. The court to which the actions are transferred may order a joint hearing or trial of any or all of the matters in issue in any of the actions; it may order all of the actions consolidated; and it may make such other orders concerning proceedings as may tend to avoid unnecessary costs or delay.

19