**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

**In Re: M.A.**

**FILED**

**June 28, 2013**
**RORY L. PERRY II, CLERK**
**SUPREME COURT OF APPEALS**
**OF WEST VIRGINIA**

**No. 13-0229** (Taylor County 12-JA-11)

**MEMORANDUM DECISION**

Petitioner Father's appeal, by counsel Justina D. Helmick, arises from the Circuit Court of Taylor County, wherein the circuit court terminated his parental rights to M.A. by order entered February 7, 2013.[1] Petitioner also appeals the June 22, 2012 order ratifying the West Virginia Department of Health and Human Resources' ("DHHR") application for emergency custody. The DHHR, by counsel Lee A. Niezgoda, has filed its response in support of the circuit court's order. The guardian ad litem, Mary S. Nelson, has filed a response on behalf of the child supporting the circuit court's order.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision is appropriate under Rule 21 of the Rules of Appellate Procedure.

On June 22, 2012, the DHHR filed a petition seeking emergency custody of M.A., who was born to petitioner and his wife the prior day. The DHHR received a referral from medical personnel at the hospital who were concerned that petitioner and his wife were not capable of caring for an infant due to mental illness and/or intellectual limitations. Additionally, it was alleged that petitioner threatened a Child Protective Services ("CPS") investigator, making it clear that service providers and CPS employees were not allowed in their home. At this time, the parents resided with petitioner's father, step-mother, and mother in a two-bedroom home. On June 25, 2012, the DHHR filed an abuse and neglect petition alleging that petitioner was unable to care for, support, and address the child's basic needs. Further, the DHHR alleged that petitioner refused services, made verbal threats to workers, and denied CPS access to the home. A preliminary hearing was held on July 3, 2012, during which petitioner and Respondent Mother waived their rights to a preliminary hearing and acquiesced to the DHHR retaining custody of M.A. Petitioner also admitted to making verbal threats toward a CPS investigator. Following the preliminary hearing, petitioner was granted supervised visitation with M.A.

---

[1]The proceedings below also concerned another child, M.N., who is not petitioner's biological child and is not the subject of this memorandum decision.

An adjudicatory hearing was originally scheduled for July 25, 2012, but both parents requested continuances because they were awaiting psychological evaluations. During a September 17, 2012 review hearing, the circuit court was advised that the parents' psychological evaluations were complete but still needed to be provided to members of the Multi-disciplinary Team ("MDT"). On October 25, 2012, the circuit court held an adjudicatory hearing wherein petitioner's medical records relating to his past treatment for mental health issues were admitted. The psychologist who performed petitioner's psychological evaluation testified to diagnosing petitioner with mood disorder not otherwise specified, post-traumatic stress disorder, alcohol dependency in sustained full remission, borderline intellectual functioning, and schizotypal traits. The circuit court also heard from a visitation supervisor, Sarah Price, who testified to her opinion that petitioner and Respondent Mother would need twenty-four-hour supervision to have M.A. in their home, and that the parents' living situation created a problem in terms of caring for the child. The circuit court thereafter adjudicated petitioner as an abusing parent based on his inability to properly care for the child. In November of 2012, the circuit court held a dispositional hearing, during which both the DHHR and guardian sought termination of petitioner's parental rights. The circuit court ultimately terminated petitioner's parental rights after finding that there were no services that could be put in place to rectify the conditions of abuse and neglect. It is from this order that petitioner appeals.

The Court has previously established the following standard of review:

"Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (2011).

To begin, the Court finds no error in regard to petitioner's allegation that the circuit court erred in ratifying the DHHR's application for emergency custody of M.A. Simply put, whether or not the circuit court erred in allowing M.A. to remain in the DHHR's custody throughout this proceeding had no bearing on the circuit court's ultimate termination of parental rights. Even if there was not a sufficient showing as to an "[i]mminent danger to the physical well being of the child" at the time the emergency custody petition was filed as required by West Virginia Code § 49-6-3(a)(1), the DHHR was not precluded from proceeding on a petition regarding the conditions of abuse and/or neglect present at that time. In fact, West Virginia Code § 49-6-3(a)

makes it clear that temporary custody of a child due to imminent danger is not a prerequisite for termination. That code section states that, upon a petition's filing, a circuit court

> *may* order that the child alleged to be an abused or neglected child be delivered for not more than ten days into the custody of the state department or a responsible person found by the court to be a fit and proper person for the temporary care of the child pending a preliminary hearing.

W.Va. Code § 49-6-3(a) (emphasis added). This language illustrates that circuit courts have discretion in transferring custody of the child if certain findings are made and it does not require such transfer in order to proceed with the abuse and neglect action. As such, the circuit court's ratification of the emergency petition had no bearing on the ultimate disposition of this case, especially in light of petitioner's eventual adjudication as an abusing parent.

Further, at the preliminary hearing, the circuit court found that continuation in petitioner's home was contrary to M.A's welfare and best interests because of the allegations that petitioner was unable to care for, support, and address the child's basic needs. These allegations were exacerbated by petitioner's threatening statements and refusal to allow service providers into the home in order to ensure the child received proper care. Additionally, petitioner even stated "that he believed that it is in the best interest of his daughter to stay in the custody of the [DHHR]. . . " during the preliminary hearing. Therefore, it is clear that the decision to grant the DHHR emergency custody of M.A. was made in accordance with the child's best interest and pursuant to our prior holdings, wherein we have stated that "when addressing custody issues involving children, the best interests of the child trump all other considerations." *Brooke B. v. Ray*, 230 W.Va. 355, --, 738 S.E.2d 21, 27 (2013). Based upon our review, the Court finds that emergency removal was in the child's best interest.

As to petitioner's allegation that the circuit court erred in terminating his parental rights, the Court finds no error in this regard. Petitioner's argument is based on our prior holding that states as follows:

> Where allegations of neglect are made against parents based on intellectual incapacity of such parent(s) and their consequent inability to adequately care for their children, termination of rights should occur only after the social services system makes a thorough effort to determine whether the parent(s) can adequately care for the children with intensive long-term assistance. In such case, however, the determination of whether the parents can function with such assistance should be made as soon as possible in order to maximize the child(ren)'s chances for a permanent placement.

Syl. Pt. 4, *In re Billy Joe M.*, 206 W.Va. 1, 521 S.E.2d 173 (1999). Petitioner erroneously argues that he was not provided enough services below to sufficiently satisfy the requirement that a thorough effort be made to determine if he could care for the child with intensive, long-term assistance. However, the Court notes that this syllabus point does not require any specific services

3

be provided, but instead requires only that social services make a thorough effort to determine if a parent can adequately care for a child with intensive long-term assistance. Petitioner was provided services in this matter, such as supervised visitation and a psychological evaluation, that allowed this determination to be made quickly, in accordance with the syllabus point above.

The circuit court was presented with evidence that, even after he was provided supervised visitation and instruction, petitioner was incapable of properly caring for the child. One service provider testified that petitioner was unable to even hold the child correctly, and a visitation supervisor testified that "[petitioner] needed direct assistance holding and feeding [M.A.], as well as recognizing cues from [M.A.]." According to this witness, petitioner required a great deal of prompting and direct assistance with these basic tasks. Additionally, the parents did not always change the child's diaper properly, and their own personal hygiene caused concern during visitations. While petitioner is correct in arguing that he made some progress during the pendency of the action below, testimony from service providers shows that the progress made was insufficient to remedy the issues and that petitioner failed to retain what he learned. One service provider testified that after changing a diaper without assistance during one visitation, petitioner required prompting and direct assistance with the same task during a later visitation. Further, petitioner failed to learn the appropriate way to place the child in a car seat and properly mix formula without some assistance. Based on this evidence and the opinion of the visitation supervisor, the circuit court found that "there are no services that could be provided . . ., other than 24-hour a day in-home services, that could ensure the safety and well-being of [M.A.], and ensure that she is properly cared for."

We have previously found that such extensive services are impossible to provide and not required by our prior holdings. *In re Maranda T.*, 223 W.Va. 512, 518, 678 S.E.2d 18, 24 (2009). In *Maranda T.*, we noted that "the service providers opined that the only way to safely reunite [the child and her mother] would be to place a service provider in the home on a permanent, round the clock, basis. Such services are neither required by *Billy Joe M.* nor would further services benefit a permanent placement finding for Maranda." *Id.* 223 W.Va. at 519, 678 S.E.2d at 25. Based upon this prior holding, it is clear that the circuit court did not err in terminating petitioner's parental rights, as the only services that could ensure the child was properly cared for would be constant, in-home supervision. While petitioner argues that his psychological evaluation indicated that he would be able to eventually parent the child with intensive treatment and services, the circuit court specifically found that petitioner's evaluation "clearly indicates he does not have the capacity to adequately parent the [child]." In fact, the psychological report merely speculated that petitioner "may be able to parent with assistance," while also noting that petitioner did not indicate whether he was willing to participate in the suggested therapy. As we have already addressed, the assistance petitioner would require is simply unavailable. As such, the Court finds that the circuit court did not err in proceeding to termination following the thorough effort to determine that petitioner could not adequately care for the child with intensive, long-term assistance.

West Virginia Code § 49-6-5(a)(6), in pertinent part, directs that circuit courts shall, "[u]pon a finding that there is no reasonable likelihood that the conditions of neglect or abuse can

4

be substantially corrected in the near future and, when necessary for the welfare of the child, terminate the parental, custodial and guardianship rights and responsibilities of the abusing parent . . . ." In the instant case, the circuit court specifically found that petitioner "incurred mental illness and mental deficiency, of such duration and nature as to render [him] incapable of exercising proper parenting skills or sufficiently improving the adequacy of such skills." This finding is supported by extensive evidence, including expert testimony from a psychologist who stated that "due to the severe depression and post-traumatic stress disorder, [petitioner] would have a difficult time caring for an infant, and it would bring much psychological distress to [petitioner]." Pursuant to West Virginia Code § 49-6-5(b)(6), this constitutes a situation in which there is no reasonable likelihood that the conditions of abuse and neglect can be substantially corrected in the near future. For these reasons, the circuit court did not err in terminating petitioner's parental rights.

While petitioner argues that termination was too restrictive because there were other adults in the home who were capable of assisting him with the child's care, the Court notes that the evidence does not support this argument. The psychological evaluation stated that petitioner "has very little in the way of a support group, and the family unit . . . is in constant turmoil." Additionally, the DHHR expressed concerns about the conditions in the home, such as the presence of rodents and clutter such that there was no room for the child. Based on these findings, the Court finds no merit to petitioner's argument that a less restrictive alternative could have been employed at disposition.

For the foregoing reasons, we find no error in the decision of the circuit court, and the termination of petitioner's parental rights is hereby affirmed.

Affirmed.

**ISSUED**: June 28, 2013

**CONCURRED IN BY**:

Chief Justice Brent D. Benjamin
Justice Robin Jean Davis
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Allen H. Loughry II