STATE OF WEST VIRGINIA
SUPREME COURT OF APPEALS

**FILED**

June 28, 2013
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**In Re: M.A.**

**No. 13-0228** (Taylor County 12-JA-11)

**MEMORANDUM DECISION**

Petitioner Mother's appeal, by counsel Karen Hill Johnson, arises from the Circuit Court of Taylor County, wherein the circuit court terminated her parental rights to M.A. by order entered February 7, 2013.[1] Petitioner also appeals the June 22, 2012 order ratifying the West Virginia Department of Health and Human Resources' ("DHHR") application for emergency custody. The DHHR, by counsel Lee A. Niezgoda, has filed its response in support of the circuit court's order. The guardian ad litem, Mary S. Nelson, has filed a response on behalf of the child supporting the circuit court's order.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision is appropriate under Rule 21 of the Rules of Appellate Procedure.

On June 22, 2012, the DHHR filed a petition seeking emergency custody of M.A., who was born to petitioner and her husband the prior day. The DHHR received a referral from medical personnel at the hospital who were concerned that the parents were not capable of caring for an infant due to mental illness and/or intellectual limitations. Additionally, it was alleged that Respondent Father threatened a Child Protective Services ("CPS") investigator, making it clear that service providers and CPS employees were not allowed in their home. At this time, the parents resided in a two-bedroom home with Respondent Father's family, including his father, step-mother, and mother. On June 25, 2012, the DHHR filed an abuse and neglect petition alleging that petitioner was unable to care for, support, and address the child's basic needs. Further, the DHHR alleged that it could not provide services because of Respondent Father's verbal threats to workers and refusal to allow CPS access to the home. A preliminary hearing was held on July 3, 2012, during which petitioner and Respondent Father waived their rights to a preliminary hearing and acquiesced to the DHHR retaining custody of M.A. Following the preliminary hearing, petitioner was granted supervised visitation with M.A.

---

[1]The proceedings below also concerned another of petitioner's children, M.N. However, petitioner raises no argument concerning any of the circuit court's decisions with regard to her parental rights to this child, and the Court, therefore, will not address any orders regarding M.N.

1

An adjudicatory hearing was originally scheduled for July 25, 2012, but both parents requested continuances because they were awaiting psychological evaluations. During a September 17, 2012, review hearing, the circuit court was advised that the parents' psychological evaluations were complete but still needed to be provided to members of the Multi-disciplinary Team ("MDT"). On October 25, 2012, the circuit court held an adjudicatory hearing wherein petitioner's medical records relating to her past treatment for mental health issues were admitted. The psychologist who performed petitioner's psychological evaluation provided testimony, diagnosing her with borderline intellectual functioning, and personality disorder not otherwise specified with features of borderline personality disorder. The psychologist also identified problems with petitioner's primary support group, her social support group, economic problems, and a dysfunctional living environment. Further, the circuit court heard testimony from a visitation supervisor, Sarah Price, who testified to her opinion that petitioner and Respondent Father would need twenty-four-hour supervision to have M.A. in their home, and that the parents' living situation created a problem in terms of caring for the child. The circuit court thereafter adjudicated petitioner as an abusing parent based on her inability to properly care for the child. In November of 2012, the circuit court held a dispositional hearing during which both the DHHR and guardian sought termination of petitioner's parental rights. The circuit court ultimately terminated petitioner's parental rights after finding that there were no services that could be put in place to rectify the conditions of abuse and neglect. It is from this order that petitioner appeals.

The Court has previously established the following standard of review:

"Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (2011).

To begin, the Court finds no error in regard to petitioner's argument that the circuit court erred in ratifying the DHHR's application for emergency custody of M.A. Simply put, whether or not the circuit court erred in allowing M.A. to remain in the DHHR's custody throughout this proceeding had no bearing on the circuit court's ultimate termination of parental rights. Even if there was not a sufficient showing as to an "[i]mminent danger to the physical well being of the child" at the time the emergency custody petition was filed as required by West Virginia Code §

2

49-6-3(a)(1), the DHHR was not precluded from proceeding on a petition regarding the conditions of abuse and/or neglect present at that time. In fact, West Virginia Code § 49-6-3(a) makes it clear that temporary custody of a child due to imminent danger is not a prerequisite for termination. That code section states that, upon a petition's filing, a circuit court

> *may* order that the child alleged to be an abused or neglected child be delivered for not more than ten days into the custody of the state department or a responsible person found by the court to be a fit and proper person for the temporary care of the child pending a preliminary hearing.

W.Va. Code § 49-6-3(a) (emphasis added). That language illustrates that circuit courts have discretion in transferring custody of the child if certain findings are made and it does not require such transfer in order to proceed with the abuse and neglect action. As such, the circuit court's ratification of the emergency petition had no bearing on the ultimate disposition of this case, especially in light of petitioner's eventual adjudication as an abusing parent.

Further, at the preliminary hearing, the circuit court found that continuation in petitioner's home was contrary to M.A's welfare and best interests because of the allegations that petitioner was unable to care for, support, and address the child's basic needs. These allegations were exacerbated by the fact that Respondent Father made threatening statements and refused to allow service providers into the home in order to ensure the child received proper care. Additionally, the circuit court noted that petitioner "agree[d] that it [was] in the best interest of her daughter to stay in the custody of the [DHHR]. . ." during the preliminary hearing. Therefore, it is clear that the decision to grant the DHHR emergency custody of M.A. was made in accordance with the child's best interest and pursuant to our prior holdings, wherein we have stated that "when addressing custody issues involving children, the best interests of the child trump all other considerations." *Brooke B. v. Ray*, 230 W.Va. 355, --, 738 S.E.2d 21, 27 (2013). Based upon our review, the Court finds that emergency removal was in the child's best interest.

As to petitioner's allegation that the circuit court erred in terminating her parental rights, the Court finds no error in this regard. Petitioner's argument is based on our prior holding that states as follows:

> Where allegations of neglect are made against parents based on intellectual incapacity of such parent(s) and their consequent inability to adequately care for their children, termination of rights should occur only after the social services system makes a thorough effort to determine whether the parent(s) can adequately care for the children with intensive long-term assistance. In such case, however, the determination of whether the parents can function with such assistance should be made as soon as possible in order to maximize the child(ren)'s chances for a permanent placement.

Syl. Pt. 4, *In re Billy Joe M.*, 206 W.Va. 1, 521 S.E.2d 173 (1999). Petitioner erroneously argues that she was not provided enough services below to sufficiently satisfy the requirement that a

thorough effort be made to determine if she could care for the child with intensive, long-term assistance. However, the Court notes that this syllabus point does not require any specific services be provided, but instead requires only that social services make a thorough effort to determine if a parent can adequately care for a child with intensive long-term assistance. Petitioner was provided services in this matter, such as supervised visitation and a psychological evaluation, that allowed this determination to be made quickly, in accordance with the syllabus point above.

The circuit court was presented with evidence that, even after she was provided supervised visitation and instruction over a thirteen-week period, petitioner was incapable of properly caring for the child. One service provider testified that petitioner was unable to even hold the child correctly, and a visitation supervisor testified that "[petitioner] needed direct assistance holding and feeding [M.A.], as well as recognizing cues from [M.A.]." According to this witness, petitioner required a great deal of prompting and direct assistance with these basic tasks. Further testimony established that the visitation supervisor had "to remind [petitioner] to support and hold the neck of the baby, and to hold and feed the baby correctly." According to this witness, petitioner required "constant redirection." Additionally, the parents did not always change the child's diaper properly, and petitioner sometimes forgot to wash her own hands prior to or after diapering the child. Aside from these issues, the parents' own personal hygiene also caused concern during visitations.

Petitioner argues that the circuit court should have taken additional steps to evaluate her ability to care for the child in light of the visitation supervisor's testimony that Respondent Father attempted to control petitioner and the supervisor's suggestion that petitioner be provided individual visitation in order to more fully evaluate progress. However, the Court does not agree, as the evidence shows that petitioner simply failed to retain any of the training she received over the thirteen weeks of visitation and instruction, and nothing in the record indicates that petitioner was prevented from properly caring for the child because of Respondent Father's actions. In fact, the visitation supervisor testified that she corrected Respondent Father's attempts to control visitation by dividing parenting time equally during visitation. The visitation supervisor even testified that the parents provided care equally during the visitations. Simply put, the record shows that petitioner lacked the ability to read the child's cues, as established by provider testimony that she required prompting to take care of the child's basic needs. Based on this evidence and the opinion of the visitation supervisor, the circuit court found that petitioner "does not have the capacity to adequately parent" the child, and that "there are no services that could be provided . . ., other than 24-hour a day in-home services, that could ensure the safety and well-being of [M.A.], and ensure that she is properly cared for."

We have previously found that such extensive services are impossible to provide and not required by our prior holdings. *In re Maranda T.*, 223 W.Va. 512, 518, 678 S.E.2d 18, 24 (2009). In *Maranda T.*, we noted that "the service providers opined that the only way to safely reunite [the child and her mother] would be to place a service provider in the home on a permanent, round the clock, basis. Such services are neither required by *Billy Joe M.* nor would further services benefit a permanent placement finding for Maranda." *Id.* 223 W.Va. at 519, 678 S.E.2d at 25. Further, the psychologist who evaluated petitioner testified that offering petitioner

assistance in caring for the child would be futile because "[t]he effect that chronic serious mental illness has on children is not going to be negated by [petitioner] having assistance." Based on *Maranda T.*, the assistance petitioner would require is simply unavailable and would ultimately have proved futile based on expert testimony. As such, the Court finds that the appropriate thorough effort was made in determining that petitioner could not adequately care for the child with intensive, long-term assistance. Based upon our prior holdings, it is clear that the circuit court did not err in proceeding to disposition, as the only services that could ensure the child was properly cared for would be constant, in-home supervision.

West Virginia Code § 49-6-5(a)(6), in pertinent part, directs that circuit courts shall, "[u]pon a finding that there is no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future and, when necessary for the welfare of the child, terminate the parental, custodial and guardianship rights and responsibilities of the abusing parent . . . ." In the instant case, the circuit court specifically found that petitioner "incurred mental illness and mental deficiency, of such duration and nature as to render [her] incapable of exercising proper parenting skills or sufficiently improving the adequacy of such skills." This finding is supported by extensive evidence, as outlined above. Pursuant to West Virginia Code § 49-6-5(b)(6), this constitutes a situation in which there is no reasonable likelihood that the conditions of abuse and neglect can be substantially corrected in the near future. For these reasons, it was not error to terminate petitioner's parental rights.

While petitioner argues that the circuit court improperly relied on medical records regarding a prior involuntary commitment in deciding to terminate her parental rights, the circuit court specifically found that petitioner's medical records "are relevant as they speak to the ability of [petitioner] to parent the [child], and speak directly to the issues at hand in the instant case." Upon our review, the Court agrees. Petitioner's psychological evaluation revealed an extensive history of mental health issues that were described as "chronic problems" by her evaluator. In fact, the psychological evaluation stated that petitioner had between fifteen and twenty past episodes of either threatened or actual self-injurious behavior, including suicide attempts. This behavior included drinking hydrogen peroxide, cutting and burning herself, and an attempted hanging. The evaluation also revealed several psychiatric hospitalizations. As such, the Court finds that it was not error to rely on petitioner's prior medical records in reaching disposition, as they were relevant to her ongoing mental health issues that caused her inability to properly care for the child.

Further, the Court finds no merit in petitioner's argument that the circuit court should have ordered that petitioner be assessed for medication that would assist her in her ability to care for the child. Petitioner's psychological evaluation reflects that, while petitioner has been on mood stabilizers in the past, she "often is non-compliant with her medications." The report additionally stated that petitioner had not taken any psychiatric medication since October of 2011, despite having been discharged from her most recent hospitalization with prescriptions for medication. In fact, the psychologist who performed the evaluation testified that she did not expect that petitioner would be compliant with medications and treatment in the future, based on her past history of non-compliance. The Court notes that "'. . . courts are not required to exhaust every speculative

5

possibility of parental improvement before terminating parental rights . . . .' Syllabus point 1, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980)." Syl. Pt. 4, in part, *In re Kristin Y.*, 227 W.Va. 558, 712 S.E.2d 55 (2011). Based on the psychologist's testimony and our prior holdings, the circuit court did not err in terminating petitioner's parental rights without first ordering an assessment of medication that petitioner believed could help her care for her child.

Finally, the Court notes that petitioner's argument as to the circuit court's failure to consider the fact that she raised an older child, M.N., until he was eight years old is without merit. The circuit court's order clearly includes the relevant information regarding petitioner's older child and demonstrates that her care for that child was properly considered prior to termination of her parental rights to M.A. However, the record also shows that petitioner had assistance from the child's father until M.N. was eight years old, at which point petitioner and the father separated and the child resided with his father. As such, it is clear that petitioner's prior care for M.N., while considered by the circuit court, was not dispositive of the issue of her ability to care for M.A., especially in light of substantial evidence showing that she lacked the ability to care for the infant.

For the foregoing reasons, we find no error in the decision of the circuit court, and the termination of petitioner's parental rights to M.A. is hereby affirmed.

Affirmed.

**ISSUED**: June 28, 2013

**CONCURRED IN BY**:

Chief Justice Brent D. Benjamin
Justice Robin Jean Davis
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Allen H. Loughry II