# CHARLESTON.

GOSHORN'S EX'RS *v*. COUNTY COURT OF KANAWHA COUNTY.

Submitted September 14, 1896—Decided December 12, 1896.

1. COUNTY COURT—CONTRACTS—RATIFICATION OF CONTRACTS.

Two members of the county court of Kanawha county, made by law a corporation, on the streets of Charleston, and as individuals, gave the following order: "Charleston, W. Va., Nov. 12, 1894. Mr. George A. Goshorn—Dear Sir: You will please deliver to Kanawha county poor farm, by river, as soon as there is water in the river for large boats to run so you can deliver same, 60 hogs, for use of poor farm, at 7 cents per pound. J. D. Shrewsbury. C. S. Young, Pres. Kana. Co. Ct." In pursuance thereof the twenty seven hogs in controversy were delivered at the poor farm, received by the superintendent, and appropriated to the use of the poor. *Held*, that such transaction, unless ratified by the county court, had no binding force on said corporation.

2. COUNTY COURT—MEMBERS OF COUNTY COURT.

For the members of such corporation can not individually give their consent or enter into a contract in such manner as to oblige the corporate body.

3. COUNTY COURT—CONTRACTS—RATIFICATION OF CONTRACTS.

It was not ratified by the superintendent of the poor farm, as he did not appear to have the authority, express or implied, to have made the original contract, or to know any thing about the transaction. It was not ratified by the corporate body, but, when presented for allowance and payment, it was disallowed and rejected.

4. COUNTY COURT—*Quantum Valebant*.

The county court, not being able, without its fault, to return the same hogs, was liable to pay what they were reasonably worth, viz. the fair market value at the time and place of delivery, with such incidental sums added as were necessary to make the sellers whole.

5. COUNTY COURT.

The county court is a corporation created by statute, and can only do such things as are authorized by law, and in the mode prescribed.

KENNEDY & DYER for plaintiffs in error, cited 106 Ind. 151; 1 Beach, Pub. Corp. §§ 689-90 (notes); 15 Barb. 323; 33 Ohio St. Rep. 336; 25 Pac. Rep. 1020; 1 Dill. (4th Ed.) pp. 539-40, §§ 463-64; 4 Cush. (Mass.) 494; 35 N. H. 477; 8 Nev. 181; 79 Me. 305.

W. S. LAIDLEY, S. C. BURDETT and A. C. BLAIR, PROS. ATT'Y, for defendant in error, cited 27 W. Va. 245, 255; Code, c. 39, ss. 6, 8a, 46; 23 W. Va. 318, 617; 16 Am. St. Rep. 224; 35 Am. Dec. 54; 88 Va. 990; 20 W. Va. 360; 43 Am. Dec. 740; 25 W. Va. 173; Cook, Stockholders 592, 624, 712; Greens *Ultra Vires*, 550, *etc.*; 18 Am. St. Rep. 889; Lawson Cont. 172; 6 Bacon's Abridgt., 559; 6 Leigh, 47; 9 Pet. 607, 629; 68 Am. Dec. 235; 12 Ga. 205; 23 Ill. 470; 13 Iowa, 214-15; 14 Wis. 553; 12 Allen, 487, 493; 12 Minn. 298; 32 Pa. St. 340; 73 Ala. 447; 21 Wis. 464; 10 Cal. 367; 18 Md. 276, 283; 59 Mo. App. 532; Story Agency, §§ 243, 244, 250; 29 W. Va. 381; 23 Am. St. Rep. 491; 2 Bart. Chy. 237; 31 W. Va. 688; 1 Cranch, C. C. 131, 138, 167, 181; Bart. L. Pr. 335 (notes); 1 Wait, Act. & Def. 398; 36 Miss. 458; 1 Jones, N. C. L. 341; 4 Minn. Inst. part 1, 695; Hogg's Pl. § 220.

HOLT, PRESIDENT:

On appeal from a judgment rendered by the Circuit Court of Kanawha county on the 1st day of July, 1895, in favor of defendant below, defendant in error. By the Constitution of this state (see sections 22-24, art. VIII) the county courts, to be composed of three commissioners, two constituting a quorum for the transaction of business, are given, under such regulations as may be prescribed by law, the superintendence and administration of the internal police and fiscal affairs of their counties; and by chapter 39 of the Code the county court of every county shall be a corporation by the name of the "County Court of ———— County," by which name it may sue and be sued, plead and be impleaded, and contract and be contracted with; and by chapter 46 of the Code the county court of every county shall hereafter do and perform all the duties heretofore devolved upon the boards of overseers of the poor, and by sections 19 and 20 may appoint an agent who shall have charge

of the county infirmary, or place of general reception for the poor of the county, but he shall be at all times under the control of the county court, and observe the rules and regulations prescribed by it.

The plaintiffs claim that on the 10th day of December, 1894, as executors of J. H. Goshorn, deceased, they entered into a contract with the county court, through C. S. Young, president of the said county court, and Jacob Shrewsbury, one of the commissioners thereof, whereby the county court agreed and promised to purchase of plaintiffs a lot of hogs at the price of seven cents per pound gross, the hogs to be delivered at the poor farm of Kanawha county; that, in pursuance of said contract, plaintiff did deliver to the agent at the poor farm twenty seven hogs, weighing six thousand four hundred and fifteen pounds, and that defendant thus received and accepted and used and consumed the hogs, whereby they became indebted and liable to pay plaintiffs the sum of four hundred and forty nine dollars and five cents, the amount due and owing therefor, which account was duly presented to the county court at its regular December term, 1894, to be allowed for payment, to be provided for as required by law; but the county court disallowed the same, and thereupon plaintiffs brought this suit, which resulted in the judgment for the county court which is here complaine 1 of.

The facts are as follows: About the 10th day of September, 1894 on one of the streets of Charleston, plaintiff G. A. Goshorn met C. S. Young, who was then president of the county court, whereupon Young said to him, "Are you going to have any hogs to sell this fall?" The plaintiff replied, "Yes, we will have some hogs to sell." Young then asked plaintiff Goshorn what they would be worth, and plaintiff replied that it was then too early to say, but he would let him know the price later; and on November 12, 1894, plaintiff again met Young on one of the streets, and informed him that he would take seven cents per pound gross, and Young replied, "We will take them." Plaintiff then drew up a paper, which was afterwards signed, and returned to him, as follows: "Charleston, W. Va., Nov 12, 1894. Mr. Geo. A. Goshorn—Dear Sir: You will

please deliver to Kanawha county poor farm, by river, as soon as there is water in the river for large boats to run so you can deliver same, 60 hogs, for use of poor farm, at 7 cents per pound. J. D. Shrewsbury. C. S. Young, Pres. Kana. Co. Court." That pursuant to the order and request the twenty seven hogs in controversy were bought by him at four cents per pound gross, cash, of R. H. Armstrong, in Mason county, and shipped by steamboat at freight cost of six dollars and seventy five cents to the poor farm, where they were received and slaughtered by John Thomas, then superintendent of the poor farm. They were nice hogs, averaging about two hundred and sixty pounds. On the 22d day of November, 1895, a regular court day, Goshorn met Young at the courthouse door, and handed him the account. The court on that day passed upon, and by its order entered of record allowed, the plaintiff's amount, viz. four hundred and forty nine dollars and five cents, for the twenty seven hogs, weighing six thousand four hundred and fifteen pounds, at seven cents, and six dollars and seventy five cents freight; but afterwards during the same day, the court, not having signed the orders, set the same aside, and entered an order at four cents per pound gross, which was shown to be the fair, reasonable market price at the time of delivery, allowing plaintiffs two hundred and sixty three dollars and thirty five cents. The court decided that this contract relied on by plaintiffs was not the contract of or binding upon the defendant, the county court; that plaintiffs were entitled to the fair market price, which was at the time and place of delivery four cents per pound; and that the county having by order of 22d November, 1895, allowed for the hogs that price, and for the freight, caused its order for that amount to be issued, and signed by the president, directing the sheriff to pay the same, to wit, two hundred and sixty three dollars and thirty five cents, to plaintiffs, gave judgment for defendant.

1. The first matter that attracts attention is why these plaintiffs should sue, as executors of J. H. Goshorn, deceased for the price of hogs bought by themselves of Armstrong, and sold to the county court. It is evidently a contract in their own right, and they must be regarded as suing in *suo*

*jure*, though the description of executors be added to their names as plaintiffs. Such matter of description may, however, be treated as surplusage, and therefore a harmless error. See 3 Lomax, Ex'rs, marg. p. 371; 3 Rob. Prac. (New Ed.) 518; *Rose's Adm'x* v. *Burgess*, 10 Leigh, 186; *Harvey* v. *Skipwith*, 16 Gratt. 393; *Clarkson* v. *Booth*, 17 Gratt. 490, 497.

2. Was any express and binding contract made with the county court? Section 40 of chapter 39 provides that every person having a claim or demand against a county shall file the claim with the clerk of the county court thereof an account or statement of the same, fully setting forth the items. The clerk shall present such account or statement to such court at its first meeting thereafter, which shall allow the whole, or such part thereof as they may deem just, or disallow the whole. Section 38 provides that no money shall be paid by the sheriff out of the county treasury except upon a proper order, signed, *etc.*, and by section 36 no order shall be drawn on the county treasury unless authorized by a special order or appropriation of the county court, except, *etc.* By section 46 all the proceedings of the county court are required to be entered of record. The several commissioners of the court have no authority or power to act except as conservators of the peace. See clause 2 of section 3a of chapter 39. This corporation of the county court, created by statute, must depend both for its powers and the mode of exercising them upon the true construction of the statute creating them. The members of a corporation aggregate can not separately and individually give their consent or enter into contract in such manner as to oblige themselves as a collective body or board. *Pennsylvania L. R. Co.* v. *Board of Education*, 20 W. Va. 360. Therefore the members of the county court, in discharging the duties heretofore devolved upon boards of overseers of the poor, and now devolved on them (see section 2 of chapter 46 of the Code) must act as a corporate body, and at the courthouse—the place fixed by law. Two or more of them, acting as individuals, on the street (as in this case) could make no contract binding on the county court. No such individual authority is given them. They must act as a court, a quorum being present, and at the

courthouse; and must enter of re co rd all their proceedings and their proceedings in relation to the poor should be kept in a separate book, provided for the special purpose. Therefore, unless the court in some way ratified this contract, it could have no binding force.

But it is claimed that it was ratified by the action of the court. That would have been good beyond all question if the order allowing it had been permitted to stand; but on the same day—even before the orders were signed—this order was reconsidered, and set aside, and the present order, allowing two hundred and sixty three dollars and thirty five cents, was entered in lieu thereof, which is based on four cents a pound (and the freight) which was admitted to be the fair and reasonable value, and the market price at the time and place of delivery; and that order, if not paid (and there is no evidence on the point) still stands good, for which an order has been issued payable by the sheriff out of the county treasury—the only mode of payment that the law provides in such cases. The implied liability of the county court resulting from the hogs having been used and consumed at the county infirmary is conceded. On this subject see 1 Dill. Mun. Corp. (4th Ed.) p. 536, § 460 *et seq.*; 1 Beach, Pub. Corp. § 689, notes; *Bank* v. *Patterson's Adm'r*, 7 Cranch, 299. The obligation to do justice rests upon all persons, natural and artificial; and if the municipality obtains the money or other property of others without authority, the law, independent of any statute, will compel restitution or compensation. *Chapman* v *County of Douglas*, 107 U. S. 348, 355 (2 Sup. Ct. 62) citing *Marsh* v. *Fulton Co.* 10 Wall, 676, 684; *Louisiana* v. *Wood*, 102 U. S. 294. See *Argenti* v. *City of San Francisco*, 16 Cal. 256, 282; 15 Am. & Eng. Enc. Law, 1082. See 4 Thomp. Corp. § 5180 *et seq.*, for a full discussion of the subject.

It is a just and reasonable presumption (nothing to the contrary appearing) that he who has received the services or property of another impliedly undertakes to make compensation therefor; that the doctrine applies generally to corporations as well as to natural persons; and therefore an action of *assumpsit* will lie against a corporation upon an implied obligation that the corporation, having obtained

and used the property; is bound in conscience to pay the party on a *quantum valebant* what the property was reasonably worth. Having received the benefits, it is bound in conscience to pay, and will not be heard to say that the original agreement was not made by a person legally authorized to contract. Upon this principle the county court made its allowance (which was approved of by the circuit court) and claims that it was never knowingly ratified in any other way or to any greater extent. Was this contract ratified at the contract price by the hogs being received by John Thomas, then superintendent of the poor farm, and used for the county court, his principal, as food for the inmates of the infirmary? The doctrine of ratification, so widely extended and of growing application to corporations, is very usefully, for our purpose, and fully and lucidly discussed by Judge Thompson in his work on Corporations. He says that the doctrine of ratification is, in a measure, like the doctrine of estoppel, a principle of justice, a rule of evidence and a rule of judicial policy and convenience. "It is a principal of law universally acquiesced in and constantly applied that a corporation (and within qualified limits a municipal corporation) like a natural person, may ratify, affirm, and validate any contract made or act done in its behalf which it was capable of making or doing in the first instance; that such a ratification may take place by conduct *in pais*, and that no formal vote or resolution of the board of directors or the body of the shareholders is necessary to that end; that such conduct may consist either in affirmative action, or in a failure to act—that is; in passive acquiescence; that it may be the conduct either of a managing agent or of the board of directors, or of the body of the shareholders—in short the conduct of the agent or agency which might have authorized the act in the first instance, or of the general constituent body; and that when a ratification has thus taken place it is equivalent to an antecedent authority, and estops the corporation from subsequently disavowing the act so ratified. In this manner not only unauthorized acts of agents, but also the acts of *de facto* officers, and even those of officious intermeddlers, may become the acts of the corporation by adoption." 4

Thomp. Corp. § 5286. Whether John Thomas was the agent appointed under section 19 of chapter 46 of the Code does not appear, but we can not take for granted that he was such agent; and, if so, the inference might be reasonable, considering the necessity of keeping the infirmary supplied with all things needful, that he would have had authority to make the purchase in question in the first instance. 4 Thomp. Corp. § 5287. But the circumstances attending this transaction show that he knew nothing about the purchase or the price, except that it was not made by himself, but had been made either by the court or some one or more of the commissioners, and of course he did not knowingly accept the benefit of the contract in the sense required in order to make it amount to a ratification at that price, if at all. I would infer that the practice has been for the individual members of the county court to do the buying, for the statute prescribing the powers and duties of the county court nowhere prescribes the manner in which all the articles of supplies necessary for the maintenance of the poor shall be procured or contracted for. They have to be supplied constantly, and as the necessity of the case may require, and it was the custom for this to be done by the members of the court, but always subject to the ratification of the court as to the price, and this purchase was intended no doubt to be made in that way; but the trouble is that the court refused to ratify it, but provided for the payment according to what the hogs were shown to be worth at the time and place of delivery, and in the only mode in which the court could pay, and with reference to which all such contracts are supposed to be made, unless otherwise specially provided; and when that was done, the contract, as to the mode of payment, was performed on the part of the county court, and to give them a judgment for the same amount would only be equivalent to giving plaintiffs a second order for their claim, for no execution could have issued on the judgment except by the order of the court, and would not be directed to be issued unless the case were quite exceptional, for a certified copy of the judgment would be payable on presentation to the sheriff, the *ex officio* treasurer, on the

same footing as orders on the county treasury.   See section 4, chapter 39, Code.

Section 8a of chapter 39 makes it unlawful for any county court to constitute or appoint itself or any of its members a committee, or to otherwise designate or select itself or any member thereof to act in any manner, as such committee or otherwise, in any matter or matters, wherein such court, or any of its members acting in such capacity, shall charge or receive any compensation, directly or indirectly, to be paid by the county, for which such court or any of its members shall so act, *etc.;* being an act to prevent county courts from abusing their powers.   Great stress is laid upon this section by the counsel for the county court, but it is proper to say that there is nothing in this record to bring that section into play in this case.   The difference between four cents and seven cents in such a single transaction does not amount to much, yet this small sum of three cents can be and has been made the basis of plundering the tax payers of the United States to the amount of many millions, and this danger dictated the law cited above.

It is said that the practice of making these purchases and of providing for such necessary supplies by the members of the county court acting as individuals is so common and universal as to be matter of public history, of which the court will take judicial notice.   If so, they would also take notice that such contracts are very generally, if not always, understood to be subject to the ratification of the county court as to the prices to be paid.

Again, it is said that a contract, if ratified at all, must be ratified as a whole.   A leading principle in the law relating to this subject is that, where a contract is made by one assuming to act in behalf of a corporation, and for a purpose authorized by its charter, and the corporation, after knowledge of the facts attending the transaction is brought home to the proper officers, receives and retains the benefit of it without objection, it thereby ratifies the unauthorized act, and estops itself from repudiating it.   The reason is that it must exercise its option of affirming or disaffirming it in whole, and not in part; that it can not disaffirm so much of the unauthorized act as is onerous, while retaining so much

of it as is beneficial; that it can not keep the advantage while repudiating the burden; that it can not disaffirm the contract while keeping the consideration. The justice of this principle is so obvious that a discussion of the reasons on which it is founded would be superfluous. 4 Thomp. Corp. § 5303, citing *Gold Mining Co.* v. *National Bank,* 96 U. S. 640; *Pennsylvania R. Co.* v. *Keokuk & H. Bridge Co.,* 131 U. S. 371 (9 Sup. Ct. 770); *Pixley* v. *Railroad Co.,* 33 Cal. 183-191; *City of Cincinnati* v. *Cameron,* 33 Ohio St. 336, 364; *Argenti* v. *City of San Francisco,* 16 Cal. 255; See *Fister* v. *La Rue,* 15 Barb. 323; *Moss* v. *Mining Co.,* 5 Hill, 137.

But it must be remembered that this is not a corporation created for private gains, but a public one, created solely to look after public interests, and to discharge public duties; that the superintendent of the poor farm had no knowledge of that part of the transaction which it was essential for him to know, even if he had the power to make the original purchase, which does not appear, and may be regarded as at least doubtful; and if the knowledge of those members of the court who, as individuals, made the purchase, is sufficient, then the contract needs no ratification; but mainly for the reason that the purchase was evidently made subject to the ratification of the court as to price. The court refused to ratify it. The hogs could not be returned, but it made the parties whole by providing that they should be paid the fair market price at the time and place of delivery. Not being able to return the hogs, the court paid the plaintiffs what they were worth in the only way it could pay. See *Ratcliff* v. *County Court,* 33 W. Va. 94 (10 S. E. 28). See sections 36-38, 42, chapter 39, Code. All contracts with the court are presumed to be made with reference to that mode of payment unless otherwise specially provided. Section 40 of chapter 39, which provides that every person having a claim or demand against a county shall file the same with the clerk of the county court (as was not done in this case) although not mandatory, yet certainly has a meaning and a purpose beyond that of mere convenience. It means, for one thing, that such claims on their way to be passed on by the court, shall pass under the scrutiny of the clerk —a very important safeguard, if the clerk discharges his

duty. I think, perhaps, the county court could have prop-
erly increased the allowance somewhat, but not enough to
call for any change by this Court, as the case now stands,
and that the judgment ought to be affirmed.