# IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

### September 2021 Term

_____

No. 21-0234

_____

**FILED**
**November 16, 2021**
released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## LARRY BRADFORD,
**Plaintiff Below, Petitioner**

## V.

## WEST VIRGINIA SOLID WASTE MANAGEMENT BOARD,
**Defendant Below, Respondent**

_____

### Certified Questions from the Circuit Court of Kanawha County
### The Honorable Jennifer F. Bailey, Judge
### Civil Action No. 15-C-1543

### CERTIFIED QUESTIONS ANSWERED

_____

### Submitted: November 1, 2021
### Filed: November 16, 2021


Kathy A. Brown
Timothy D. Houston
Brown Houston PLLC
Charleston, West Virginia
Attorneys for the Petitioner

James E. Simon
Kevin L. Carr
Megan W. Mullins
Spilman Thomas & Battle PLLC
Charleston, West Virginia
Attorneys for the Respondent


**CHIEF JUSTICE JENKINS delivered the Opinion of the Court.**

**SYLLABUS BY THE COURT**

1.      "When a certified question is not framed so that this Court is able to fully address the law which is involved in the question, then this Court retains the power to reformulate questions certified to it under both the Uniform Certification of Questions of Law Act found in *W. Va. Code*, 51-1A-1, *et seq*. and *W. Va. Code*, 58-5-2 [(1998)], the statute relating to certified questions from a circuit court of this State to this Court." Syllabus point 3, *Kincaid v. Mangum*, 189 W. Va. 404, 432 S.E.2d 74 (1993).

2.      "The primary object in construing a statute is to ascertain and give effect to the intent of the Legislature."   Syllabus point 1, *Smith v. State Workmen's Compensation Commissioner*, 159 W. Va. 108, 219 S.E.2d 361 (1975).

3.      "It is a fundamental rule of construction that, in accordance with the maxim *noscitur a sociis*, the meaning of a word or phrase may be ascertained by reference to the meaning of other words or phrases with which it is associated.  Language, although apparently general, may be limited in its operation or effect where it may be gathered from the intent and purpose of the statute that it was designed to apply only to certain persons or things, or was to operate only under certain conditions." Syllabus point 4, *Wolfe v. Forbes*, 159 W. Va. 34, 217 S.E.2d 899 (1975).

4.	"Statutes which relate to the same subject matter should be read and applied together so that the Legislature's intention can be gathered from the whole of the enactments."  Syllabus point 3, *Smith v. State Workmen's Compensation Commissioner*, 159 W. Va. 108, 219 S.E.2d 361 (1975).

5.	"It is not for this Court arbitrarily to read into a statute that which it does not say.  Just as courts are not to eliminate through judicial interpretation words that were purposely included, we are obliged not to add to statutes something the Legislature purposely omitted."  Syllabus point 11, *Brooke B. v. Ray C., II*, 230 W. Va. 355, 738 S.E.2d 21 (2013).

6.	A county solid waste authority has no power to enter into a fixed-term employment contract with a non-civil service employee.  Accordingly, any such contract is unenforceable and void as a matter of law.

**Jenkins, Chief Justice:**

The Circuit Court of Kanawha County certifies four questions to this Court pertaining to the ability of a county solid waste authority to enter into a fixed-term employment contract with a non-civil service employee, whether a liquidated damages provision in such a contract is enforceable, whether defenses of estoppel and/or waiver may be asserted to enforce such a contract, and whether such a contract may be implied. After considering the parties' briefs and oral arguments, the appendix record submitted, and the relevant statutes and legal precedent, we conclude that a county solid waste authority has no power to enter into a fixed-term employment contract with a non-civil service employee. Accordingly, any such contract is unenforceable and void as a matter of law.

**I.**

**FACTUAL AND PROCEDURAL HISTORY**

In June of 2008, the Nicholas County Solid Waste Authority ("NCSWA") executed a "Manager Employment Contract and Agreement"[1] with employee Larry Bradford ("Mr. Bradford"),[2] under which Mr. Bradford was to continue in his position as

_____

[1] While the parties indicate that the contract was entered into on or around July 1, 2008, it was notarized on June 17, 2008.

[2] The contract acknowledges that Mr. Bradford was "presently employed by NCSWA as its manager."

1

Manager of the Nicholas County Solid Waste Facility for a fixed term of five years.[3]

Pertinent to the questions certified by the circuit court, the contract provided as follows, with Mr. Bradford being identified as "Manager,"

> 1.  TERM:
>
> NCSWA does hereby employ Manager in the capacity of manager of the Nicholas County Solid Waste facility and landfill . . . and Manager accepts such employment. The parties agree that Manager shall continue the duties he is now performing. The term of this Agreement shall begin on the 1st day of July, 2008 and terminate on the 1st day of July, 2013. The parties agree that before the first anniversary date of this Agreement, and thereafter on or before each subsequent anniversary date, they shall me[e]t and determine whether to extend the term of this Agreement for an additional period of one (1) year. If both parties agree, the term of this Agreement shall be extended by such one (1) year period. In the event NCSWA elects not to extend the term of this Agreement for the one (1) additional year referred to above, on or before the first anniversary date of the term of this agreement, NCSWA shall pay unto Manager the sum of Thirty Thousand Dollars ($30,000.00). In the event the Manager elects not to extend the term of this Agreement for the one (1) additional year, on or before the anniversary date of the term of this Agreement, Manager shall pay NCSWA the sum of Thirty Thousand Dollars ($30,000.00). If the parties agree to extend the term of

---

[3] The contract also contained a rolling provision. As evidenced by the contract terms quoted in the body of this opinion below, the contract was to begin on July 1, 2008, and terminate on July 1, 2013. However, according to its rolling provision, before the first anniversary date of the agreement, and on or before each anniversary thereafter, the parties were required to meet and determine whether to extend the contract for a period of one year. Thus, before July 1, 2009, the parties were required to decide whether to extend the contract to July 1, 2014. If either party elected not to extend the contract, that party became obligated to pay the other party $30,000. The result of this provision is that, without the payment of $30,000 for declining to extend the contract, or a mutual election to not extent the contract, the contract always had a term of five years remaining.

2

this Agreement[,] they shall execute an acknowledge [sic] of such extension. In the event both of the parties elect not to extend the term of this Agreement as set forth in this paragraph this Agreement shall continue without such extension and without payment of any amount to either party. The parties Agreement [sic] acknowledge that this Agreement may be terminated for cause as set forth hereinafter and also may be terminated without cause as set forth hereinafter. Notwithstanding any provision set forth herein, the parties may terminate this Agreement upon the mutual Agreement of the parties. It is [sic] intent of this section that the term of this Agreement shall not be more than five (5) years, in any event.

. . . .

5.　　TERMINATION:

. . . .

(D)　Notwithstanding any other provisions of the contract, either party may terminate this agreement, upon ninety (90) days written notice to the other party, with or without cause. In the event Manager elects to terminate this Agreement, pursuant to this subparagraph, before the expiration of this [sic] term of this Agreement and such termination occurs during a time when the term of this Agreement is five (5) years he shall pay NCSWA the sum of Twenty Thousand Dollars ($20,000.00). If such termination occurs at any time when the term of this Agreement is less than five (5) years, Manager shall pay NCSWA the sum of Five Thousand Dollars ($5,000.00). In the event NCSWA elects to terminate this Agreement, pursuant to this subparagraph, before the expiration of the term of this Agreement and such a termination occurs during a time when the term of this agreement is five (5) years it shall pay Manager the sum of One Hundred Thousand Dollars ($100,000.00). If such termination occurs at a time when the term of this Agreement is less than five (5) years, NCSWA shall pay Manager the sum of Eighty Thousand Dollars ($80,000.00). The amount to be paid by and to either party upon his or its election to terminate this Agreement, pursuant to this subparagraph, was a result of

3

negotiations between the parties and represents a liquidated damage payment for the early termination of this Agreement, without cause. The parties acknowledge and agree that any damages or losses which may be suffered by either of them as a result of an early termination of this Agreement pursuant to this subparagraph are difficult, if not impossible, to calculate and that the amount to be paid by either party to the other upon the termination of this Agreement, pursuant to this subparagraph, before the expiration of its term, is fair and reasonable . . . .

On June 18, 2014, the West Virginia Solid Waste Management Board ("WVSWMB") exercised its power of supersedure over the NCSWA pursuant to West Virginia Code section 22C-3-26 (eff. 2005).[4] The next day, Mr. Bradford's employment was terminated by the WVSWMB.

---

[4] According to this code section,

> For purposes of exercising the authority provided under section nine-a [§ 22C-4-9a], article four of this chapter, the board may by resolution supersede and exercise, in part or whole, the powers granted to only county or regional solid waste authorities that operate solid waste facilities as provided in chapters seven [§§ 7-1-1 et seq.], twenty-two [§§ 22-1-1 et seq.], twenty-two-c [§§ 22C-1-1 et seq.] and twenty-four [§§ 24-1-1 et seq.] of this code. Actions of the board supersede those powers granted to only county or regional solid waste authorities that operate solid waste facilities.

W. Va. Code § 22C-3-26.

Mr. Bradford then initiated the underlying lawsuit, in August 2015, in which he has asserted causes of action for violation of the West Virginia Wage Payment and Collection Act and for breach of contract. The litigation continued over the next few years, and, on January 8, 2018, the parties jointly moved the circuit court to certify questions to this Court. By order entered on March 11, 2021, the circuit court certified the following questions:

> a.    Whether a fixed-term employment contract between a non-civil service employee and a government entity is enforceable as a matter of law?
>
> b.    Whether a fixed-term employment contract between a non-civil service employee and [a] government entity that contains liquidated damages provisions applicable to both contracting parties is enforceable as a matter of law?
>
> c.    Whether the defenses of estoppel and/or waiver can be asserted against a government entity that enters into an employment contract that is later challenged as void and/or voidable?
>
> d.    Whether an implied contract may exist between a non-civil service employee and a government entity?

The circuit court answered each question in the negative. We accepted the certified questions and placed this matter on the docket for argument under Rule 20 of the West Virginia Rules of Appellate Procedure.

## II.

## STANDARD OF REVIEW

Our review of questions certified by a circuit court is plenary. "The appellate standard of review of questions of law answered and certified by a circuit court is *de novo.*" Syl. pt. 1, *Gallapoo v. Wal-Mart Stores, Inc.*, 197 W. Va. 172, 475 S.E.2d 172 (1996). To the extent that our resolution of the questions herein presented requires us to engage in statutory interpretation, we apply the same level of review. "Where the issue on an appeal from the circuit court is clearly a question of law or involving an interpretation of a statute, we apply a *de novo* standard of review." Syl. pt. 1, *Chrystal R.M. v. Charlie A.L.*, 194 W. Va. 138, 459 S.E.2d 415 (1995). Mindful of these standards, we proceed to our analysis of the questions presented.

## III.

## DISCUSSION

At the outset, we acknowledge our authority to reformulate certified questions:

> When a certified question is not framed so that this Court is able to fully address the law which is involved in the question, then this Court retains the power to reformulate questions certified to it under both the Uniform Certification of Questions of Law Act found in *W. Va. Code*, 51-1A-1, *et seq.* and *W. Va. Code*, 58-5-2 [(1998)], the statute relating to certified questions from a circuit court of this State to this Court.

6

Syl. pt. 3, *Kincaid v. Mangum*, 189 W. Va. 404, 432 S.E.2d 74 (1993). In accordance with this authority, we reformulate and reorganize the questions certified by the circuit court as follows:

1. Is a fixed-term employment contract between a non-civil service employee and a county solid waste authority enforceable as a matter of law?

2. May an implied fixed-term employment contract exist between a non-civil service employee and a county solid waste authority?

3. Is a fixed-term employment contract between a non-civil service employee and a county solid waste authority that contains liquidated damages provisions applicable to both contracting parties enforceable as a matter of law?

4. May the defenses of estoppel and/or waiver be asserted against a county solid waste authority that enters into a fixed-term employment contract with a non-civil service employee when that contract is later challenged as void and/or voidable?

We begin our analysis with reformulated question one, i.e., is a fixed-term employment contract between a non-civil service employee and a county solid waste authority enforceable as a matter of law? Mr. Bradford argues that a county solid waste authority may enter into such an employment contract pursuant to West Virginia Code sections 22C-4-17 (eff. 1994) and 22C-4-23 (eff. 2001). For the reasons that follow, we disagree.

7

Before examining these statutory provisions, we pause to clarify our proper role in ascertaining their meaning. When this Court endeavors to construe a statutory provision, our primary aim is to give effect to the intent of the Legislature. "The primary object in construing a statute is to ascertain and give effect to the intent of the Legislature." Syl. pt. 1, *Smith v. State Workmen's Comp. Comm'r*, 159 W. Va. 108, 219 S.E.2d 361 (1975). Accordingly, "When a statute is clear and unambiguous and the legislative intent is plain, the statute should not be interpreted by the courts, and in such case[,] it is the duty of the courts not to construe but to apply the statute." Syl. pt. 5, *State v. Gen. Daniel Morgan Post No. 548, Veterans of Foreign Wars*, 144 W. Va. 137, 107 S.E.2d 353 (1959). On the other hand, "A statute that is ambiguous must be construed before it can be applied." Syl. pt. 1, *Farley v. Buckalew*, 186 W. Va. 693, 414 S.E.2d 454 (1992).

Looking first at West Virginia Code section 22C-4-17, we note that it is titled "Operating contracts" and provides that

> The board may enter into contracts or agreements with any persons, firms or corporations for the operation and management of the solid waste facilities for such period of time and under such terms and conditions as are agreed upon between the board and such persons, firms or corporations. The board has power to provide in the resolution authorizing the issuance of bonds or notes, or in any trust indenture securing such bonds or notes, that such contracts or agreements are valid and binding upon the authority as long as any of said bonds or notes, or interest thereon, are outstanding and unpaid.

W. Va. Code § 22C-4-17. This provision has never before been interpreted.

8

West Virginia Code section 22C-4-17 grants to "[t]he board" the power to enter into certain contracts. The term "[t]he board" is not defined in this article, so, theoretically, it could refer to either the board of a county or regional solid waste authority or to the WVSWMB. However, giving proper context to this section and the article in which it appears, which is the article addressing county and regional solid waste authorities, this reference clearly is intended to refer to the board of directors for a county or regional solid waste authority, the designated governing body of a county or regional solid waste authority. *See* W. Va. Code § 22C-4-7(a) (eff. 1994) ("The management and control of the authority, its property, operations and affairs of any nature is vested in and governed by the board of directors."). *See also* W. Va. Code § 22C-4-3(b) (eff. 2000) (creating county solid waste authorities and providing for appointment of "[t]he authority board of directors"); W. Va. Code § 22C-4-4(b) (eff. 2000) (establishing regional solid waste authorities and providing for appointment of "[t]he board of directors of the regional solid waste authority").[5]

The specific types of contracts the board may enter under West Virginia Code section 22C-4-17 are "contracts or agreements with any persons, firms or corporations for

---

[5] The fact that a reference to "the board" in Article 4 is not intended to be the WVSWMB is also reflected by the fact that, in Article 4, the Legislature refers to the WVSWMB by its full name. *See, e.g.*, W. Va. Code § 22C-4-3(a) (eff. 2000 ) (referring to the "solid waste management board"); W. Va. Code § 22C-4-4(a) (eff. 2000) (same); W. Va. Code § 22C-4-9a (eff. 2005) (same); W. Va. Code § 22C-4-24 (eff. 2005) (same).

9

the operation and management of the solid waste facilities for such period of time and under such terms and conditions as are agreed upon . . . ." Mr. Bradford focuses upon the term "persons," and observes that the term, as used in Article 4, expressly includes "person or individual." W. Va. Code § 22C-4-2(h) (eff. 1998) (defining the term "[p]erson"). He effectively urges an interpretation of that term for purposes of West Virginia Code section 22C-4-17 that includes an "employee" as a person or individual. However, that provision does not specifically refer to "employee," and neither does the definition of the term "person." So, to this extent, the statute is vague. Based upon our examination of this provision, we find no Legislative intent for including an "employee" within the meaning of "persons" as used in West Virginia Code section 22C-4-17. First,

> It is a fundamental rule of construction that, in accordance with the maxim *noscitur a sociis*, the meaning of a word or phrase may be ascertained by reference to the meaning of other words or phrases with which it is associated. Language, although apparently general, may be limited in its operation or effect where it may be gathered from the intent and purpose of the statute that it was designed to apply only to certain persons or things, or was to operate only under certain conditions.

Syl. pt. 4, *Wolfe v. Forbes*, 159 W. Va. 34, 217 S.E.2d 899 (1975). *See also* Syl. pt. 3, *Barr v. NCB Mgmt. Servs., Inc.*, 227 W. Va. 507, 711 S.E.2d 577 (2011) (same). Here, the term "persons" is associated with "firms or corporations." Plainly, "firms or corporations" cannot refer to an employee. Thus, it is unlikely that the Legislature intended "persons" to include employees. Finding no evidence that the Legislature intended to include "employees" among the persons with whom the board of a county solid waste authority

10

may contract, we decline to add employees to the statute. *See Martin v. Randolph Cnty. Bd. of Educ.*, 195 W. Va. 297, 312, 465 S.E.2d 399, 414 (1995) ("'[C]ourts must presume that a legislature says in a statute what it means and means in a statute what it says there.' *Connecticut Nat'l Bank v. Germain*, 503 U.S. 249, 253-54, 112 S. Ct. 1146, 1149, 117 L. Ed. 2d 391, 397 (1992).")"; Syl. pt. 11, *Brooke B. v. Ray C., II*, 230 W. Va. 355, 738 S.E.2d 21 (2013) ("It is not for this Court arbitrarily to read into a statute that which it does not say. Just as courts are not to eliminate through judicial interpretation words that were purposely included, we are obliged not to add to statutes something the Legislature purposely omitted.").

Furthermore, the type of contract must be "for the operation *and* management of the solid waste facilities . . . ." W. Va. Code § 22C-4-17 (emphasis added). The reference to "operation *and* management," as opposed to "operation *or* management," indicates an intent that the contract encompass the running of the entire waste facility operation rather than simply functioning as a manager; thus, it reflects a reference to independent contractors rather than an employee.[6] This is particularly so in light of the fact that another provision expressly grants county solid waste authorities the power to employ managers, which we discuss below. *See* Syl. pt. 1, *UMWA by Trumka v. Kingdon*,

---

[6] An "independent contractor" is "Someone who is entrusted to undertake a specific project but who is left free to do the assigned work and to choose the method for accomplishing it." *Independent Contractor*, Black's Law Dictionary (11th ed. 2019).

11

174 W. Va. 330, 325 S.E.2d 120 (1984) ("The general rule of statutory construction requires that a specific statute be given precedence over a general statute relating to the same subject matter where the two cannot be reconciled."). Based on the foregoing, we conclude that West Virginia Code section 22C-4-17 does not grant a county solid waste authority the power to enter into a fixed-term employment contract with a non-civil service employee.

We next address Mr. Bradford's argument that such power may be found in West Virginia code section 22C-4-23. Mr. Bradford points to several paragraphs of section 22C-4-23 in support of his argument that a fixed-term employment contract executed by a county solid waste authority is valid and enforceable. Specifically,

> The authority may exercise all powers necessary or appropriate to carry out the purposes and duties provided in this article, including the following:
>
> . . . .
>
> (6) Acquire, construct, reconstruct, enlarge, improve, furnish, equip, maintain, repair, operate, lease or rent or contract for the operation by any person, partnership, corporation or governmental agency, any solid waste facility or collection, transportation and processing facilities related thereto.
>
> . . . .
>
> (10) Make and enter all contracts, leases and agreements and to execute all instruments necessary or incidental to the performance of its duties and powers.

(11) Employ managers, engineers, accountants, attorneys, planners and such other professional and support personnel as are necessary in its judgment to carry out the provisions of this article.

. . . .

(17) Do all acts necessary and proper to carry out the powers expressly granted to the authority by this article and powers conferred upon the authority by this article.

W. Va. Code § 22C-4-23. These paragraphs also have never been construed.

Similar to West Virginia Code section 22C-4-17, paragraph 6 of West Virginia Code section 22C-4-23 allows, in pertinent part, a county solid waste authority to "contract for the operation by any person, partnership, corporation or governmental agency, any solid waste facility . . . ." For the same reasons explained above with respect to section 22C-4-17, we find the term "person" as used in section 22C-4-23(6) does not refer to an employee. Rather, much like section 22C-4-17, this provision provides general permission to a county solid waste authority to, among other specified actions, execute contracts with independent contractors as needed to operate its solid waste facility. This interpretation, which ensures consistency between sections 22C-4-17 and 22C-4-23(6), is in accord with the principle of statutory construction directing that "Statutes which relate to the same subject matter should be read and applied together so that the Legislature's intention can be gathered from the whole of the enactments." Syl. pt. 3, *Smith*, 159 W. Va. 108, 219 S.E.2d 361. *See also* Syl. pt. 5, in part, *Fruehauf Corp. v. Huntington Moving &*

13

*Storage Co.*, 159 W. Va. 14, 217 S.E.2d 907 (1975) ("Statutes which relate to the same persons or things, or to the same class of persons or things, or statutes which have a common purpose will be regarded in *pari materia* to assure recognition and implementation of the legislative intent . . . .").

Likewise, paragraph 10 specifically addresses contracts, but, relevant to the certified question now before us, confers to a county solid waste authority only the power to "[m]ake and enter" contracts "necessary or incidental to the performance of its duties and powers." W. Va. Code § 22C-4-23(10). Nothing in the language of paragraph 10 refers to employees or sanctions fixed-term employment contracts. Similarly, paragraph 17 generally empowers a county solid waste authority to "[d]o all acts necessary and proper to carry out the powers expressly granted to the authority by this article and powers conferred upon the authority by this article." W. Va. Code § 22C-4-23(17). Again, nothing in this paragraph mentions employees or allows fixed-term employment contracts. These two provisions, in plain language, simply authorize county solid waste authorities to take those steps necessary to exercise the powers expressly granted to them, which, according to the statutes we have considered thus far, do not include the power to execute a fixed-term employment contract.

Finally, we examine Paragraph 11 of West Virginia Code section 22C-4-23, which does address a county solid waste authority's powers with respect to hiring

14

employees.[7] Paragraph 11 allows a county solid waste authority to "[e]mploy managers, engineers, accountants, attorneys, planners and such other professional and support personnel as are necessary in its judgment to carry out the provisions of this article." W. Va. Code § 22C-4-23(11). While this provision authorizes the employment of various personnel, including managers, it grants no permission for a fixed-term employment contract. Because Code section 22C-4-23(11) does not expressly allow fixed-term employment contracts, we are unable to read such a mandate into it. "It is not for this Court arbitrarily to read into a statute that which it does not say. Just as courts are not to eliminate through judicial interpretation words that were purposely included, we are obliged not to add to statutes something the Legislature purposely omitted." Syl. pt. 11, *Brooke B.*, 230 W. Va. 355, 738 S.E.2d 21. *See also* Syl. pt. 1, *Consumer Advoc. Div. v. Pub. Serv. Comm'n*, 182 W. Va. 152, 386 S.E.2d 650 (1989) ("A statute, or an administrative rule, may not, under the guise of 'interpretation,' be modified, revised, amended or rewritten.").

In fact, this Court previously has identified a public policy against such contracts. Long ago it was recognized that

> If a . . . mere employe[e] . . . is to have a fixed tenure for a fixed term, without power in the council to remove him, it would cramp the powers of the town, defeat the performance

---

[7] One other provision allows county waste authorities to, "with the written approval of the attorney general, . . . employ counsel to represent it." W. Va. Code § 22C-4-9 (eff. 1994). This statute is not relevant to the questions presently before this Court.

> of some of its essential functions, and be very hurtful to public interests. Public policy overrules that contention.

*Town of Davis v. Filler*, 47 W. Va. 413, 415, 35 S.E. 6, 7 (1900). *See also Rogers v. City of S. Charleston*, 163 W. Va. 285, 293, 256 S.E.2d 557, 562 (1979) (recognizing that "it is beyond the power of the governing body of a municipality to tie the hands of future governing bodies in exercising the full jurisdiction of their office by depriving them of a discretion which public policy demands remain unimpaired."); *Barbor v. Cnty. Ct. of Mercer Cnty.*, 85 W. Va. 359, 362, 101 S.E. 721, 722 (1920) (opining that the Legislature "did not desire or contemplate the tying of the hands of the [county] court by a contract entered into possibly before one or more of its members were elected, but meant that the court should at all times be free and unfettered in its supervisory control over such eleemosynary institutions," and rejecting a three-year employment contract that would allow a county court the "power to extend through contracts the period of their control long beyond the terms for which they were elected, and thus to deprive their regularly elected successors of the important right to exercise some of the functions normally incident to the office"). Thus, we conclude that West Virginia Code section 22C-4-23 does not permit a county solid waste authority to enter into a fixed-term employment contract with a non-civil service employee.

This court has acknowledged that government agencies may exercise only those powers specifically delegated to them by statute or necessarily implied. For example, in *Barbor*, the Court observed, with respect to a county court, that

> Its specific authority, however, is only such as the Constitution and [L]egislature of the [S]tate have seen fit to bestow upon it. "The county court is a corporation created by statute, and can only do such things as are authorized by law, and in the mode prescribed." *Goshorn's Ex'rs v. County Court*, 42 W. Va. 735, [26 S. E. 452,] pt. 5, Syl. It has only such powers as are expressly conferred by the [L]egislature, and such as are necessarily implied in the full and proper exercise of those powers expressly given. *Keatley v. County Court*, 70 W. Va. 267, 275, [73 S. E. 706 (1912)].

*Barbor*, 85 W. Va. at 362, 101 S.E. at 722. *See also* Syl. pt. 7, *City of Huntington v. Bacon*, 196 W. Va. 457, 473 S.E.2d 743 (1996) ("'The Board of Education of a school-district is a corporation created by statute with functions of a public nature expressly given and no other; and it can exercise no power not expressly conferred or fairly arising from necessary implication, and in no other mode than that prescribed or authorized by the statute.' Syl. pt. 4, *Shinn v. Board of Education*, 39 W. Va. 497, 20 S.E. 604 (1894)."). Similarly, county solid waste authorities are created by statute and possess only those powers expressly given, or necessarily implied, and no other. Because, as explained above, solid waste authorities have been granted no power to enter into fixed-term employment contracts, we now expressly hold that a county solid waste authority has no power to enter into a fixed-term employment contract with a non-civil service employee. Accordingly, any such contract is unenforceable and void as a matter of law. Applying this holding to the first

17

reformulated certified question, we answer the question in the negative. Our answer to this question makes it unnecessary for us to answer the remaining certified questions as they have been rendered moot.

## IV.

## CONCLUSION

Based upon the foregoing analysis, we answer the first reformulated certified question from the Circuit Court of Kanawha County as follows:

> Question: Is a fixed-term employment contract between a non-civil service employee and a county solid waste authority enforceable as a matter of law?
>
> Answer: No. A county solid waste authority has no power to enter into a fixed-term employment contract with a non-civil service employee. Accordingly, any such contract is unenforceable and void as a matter of law.

Our answer to this question renders the remaining three questions moot.

Certified Questions Answered.