IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

September 2022 Term

_____

No. 21-0475

_____

FILED

**November 10, 2022**

**released at 3:00 p.m.**
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

HARLEE BEASLEY,
Defendant Below, Petitioner

v.

MARK A SORSAIA,
PROSECUTING ATTORNEY
OF PUTNAM COUNTY,
Plaintiff Below, Respondent

_____

Appeal from the Circuit Court of Putnam County
The Honorable Joseph K. Reeder, Judge
Civil Action No. 21-C-50

AFFIRMED

_____

Submitted: October 18, 2022
Filed: November 10, 2022

David O. Moye, Esq.
Winfield, West Virginia
Counsel for Petitioner

Patrick Morrisey, Esq.
Attorney General
William E. Longwell, Esq.
Assistant Attorney General
Charleston, West Virginia
Counsel for Respondent

JUSTICE ARMSTEAD delivered the Opinion of the Court.

**SYLLABUS BY THE COURT**

1.      "The standard of appellate review of a circuit court's order granting relief through the extraordinary writ of prohibition is *de novo*." Syl. Pt. 1, *Martin v. W. Va. Div. of Lab. Contractor Licensing Bd.*, 199 W. Va. 613, 486 S.E.2d 782 (1997).

2.      "Where the issue on an appeal from the circuit court is clearly a question of law or involving an interpretation of a statute, we apply a *de novo* standard of review." Syl. Pt. 1, *Chrystal R.M. v. Charlie A.L.*, 194 W. Va. 138, 459 S.E.2d 415 (1995).

3.      West Virginia Code § 61-8-19(f) (eff. 2008) excludes "farm livestock" from the provisions of § 61-8-19 only if the livestock are "kept and maintained according to usual and accepted standards of livestock . . . production and management[.]"

**Armstead, Justice:**

Petitioner, Harlee Beasley, is charged with animal cruelty in violation of West Virginia Code § 61-8-19 (eff. 2008). Petitioner moved to dismiss the charge, claiming that § 61-8-19 does not apply to "livestock," like the horses and donkey the State accuses her of mistreating. The Magistrate Court of Putnam County agreed with Petitioner and dismissed the charge. After obtaining a stay, the State sought a writ of prohibition in the Circuit Court of Putnam County to prevent the magistrate court from dismissing the charge. The circuit court granted the writ, concluding that § 61-8-19 does not apply to livestock only if such livestock are "kept and maintained according to usual and accepted standards of livestock[.]"

On appeal, Petitioner asks us to reverse the circuit court. However, based on the record before us, the arguments of the parties, and the applicable law, we find that the writ of prohibition was properly granted, and we affirm the circuit court's order granting the writ and remand this case to the circuit court for further proceedings consistent with this opinion.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In February 2020, a Putnam County humane officer searched Petitioner's premises pursuant to a warrant and seized several horses and a donkey. The animals were later examined by a veterinarian, who allegedly determined that they had been denied "basic animal husbandry and adequate nutrition[.]"

1

Petitioner demanded a hearing before the magistrate court in accordance with West Virginia Code § 7-10-4 (eff. 2009).[1] However, when the case came before the magistrate, Petitioner argued that the magistrate court lacked *jurisdiction* to "dispose of the case" because "[f]arm animals are excluded pursuant to the Code."[2] The magistrate court must have agreed with this argument, at some level, because the magistrate court dismissed the case and directed that the animals be returned to Petitioner.[3]

Days later, the humane officer and an assistant prosecuting attorney filed a criminal complaint charging Petitioner with six counts of animal cruelty. According to the

---

[1] West Virginia Code § 7-10-4 authorizes a humane officer to seize "any animal . . . known or believed to be abandoned, neglected, deprived of necessary sustenance, shelter, medical care or reasonable protection from fatal freezing or heat exhaustion or cruelly treated or used as defined in" West Virginia Code §§ 61-8-19 and -19a. W. Va. Code § 7-10-4(a). After the seizure of an animal, the animal's owner or possessor may demand a magistrate court hearing to determine whether the animal was in fact mistreated. W. Va. Code § 7-10-4(b). The provisions of § 7-10-4, however,

> do not apply to farm livestock, as defined in subsection (d), section two, article ten-b, chapter nineteen of this code; poultry, gaming fowl or wildlife kept in private or licensed game farms if kept and maintained according to usual and accepted standards of livestock; poultry, gaming fowl, wildlife or game farm production and management; nor to the humane use of animals or activities regulated under and in conformity with the provisions of 7 U.S.C. § 2131, *et seq.*, and the regulations promulgated thereunder.

W. Va. Code § 7-10-4(h).

[2] *See* W. Va. Code § 7-10-4(h), *supra* note 2.

[3] Because Petitioner's brief asks to have the animals returned to her, we assume that this part of the magistrate court's order was not carried out.

2

complaint, Petitioner intentionally, knowingly, or recklessly withheld sustenance, shelter, and medical treatment from the animals in violation of West Virginia Code § 61-8-19. West Virginia Code § 61-8-19(a) provides, in pertinent part, that it is a misdemeanor for any person to intentionally, knowingly or recklessly withhold "[p]roper sustenance, including food or water[,] . . . [s]helter that protects from the elements of weather[,] or . . . [m]edical treatment, necessary to sustain normal health and fitness or to end the suffering of any animal . . . ." Petitioner responded by moving to dismiss the complaint, arguing that § 61-8-19(f) contains a blanket exception for livestock, even if they are not kept according to the usual and accepted standards for their care. *See id.* (stating that "[t]he provisions of this section do not apply to . . . farm livestock, poultry, gaming fowl or wildlife kept in private or licensed game farms if kept and maintained according to usual and accepted standards of livestock, poultry, gaming fowl or wildlife or game farm production and management . . ."). The magistrate court agreed with Petitioner and dismissed the complaint.

The magistrate court, however, stayed the dismissal on the State's motion, and the State filed a writ petition in circuit court, seeking to prohibit the magistrate court from dismissing the case based on Petitioner's interpretation of § 61-8-19(f). The State alleged that § 61-8-19(f) only excludes livestock that are "kept and maintained according to usual and accepted standards of livestock" and that adopting Petitioner's view would leave "no standards . . . to protect livestock from cruel or inhumane treatment." After hearing the parties' arguments, the circuit court agreed with the State's interpretation of §

61-8-19(f) and granted a writ prohibiting the magistrate court from dismissing the criminal complaint.

Petitioner appeals the circuit court's May 17, 2021 order granting the writ of prohibition and remanding the case to the magistrate court for further proceedings.[4]

## II. STANDARD OF REVIEW

We have held that "[t]he standard of appellate review of a circuit court's order granting relief through the extraordinary writ of prohibition is *de novo*." Syl. Pt. 1, *Martin v. W. Va. Div. of Lab. Contractor Licensing Bd.*, 199 W. Va. 613, 486 S.E.2d 782 (1997). We have also held that, "[w]here the issue on an appeal from the circuit court is clearly a question of law or involving an interpretation of a statute, we apply a *de novo* standard of review." Syl. Pt. 1, *Chrystal R.M. v. Charlie A.L.*, 194 W. Va. 138, 459 S.E.2d 415 (1995). Because Petitioner appeals from a circuit court order granting a writ of prohibition, and because the only issue on appeal is the interpretation of a statute, we apply a *de novo* standard of review as we consider Petitioner's appeal.

## III. ANALYSIS

This case involves a dispute related to West Virginia Code § 61-8-19(f), so we begin by reviewing that statutory provision. Subsection (f) provides that

> [t]he provisions of this section [i.e., § 61-8-19] *do not apply to* lawful acts of hunting, fishing, trapping or animal training or farm *livestock*, poultry, gaming fowl or wildlife kept in private or licensed game farms if kept and maintained

---

[4] Petitioner has yet to be tried under the criminal complaint, and we take no position on whether the State will be able to carry its burden of proof at trial.

4

according to usual and accepted standards of *livestock*, poultry, gaming fowl or wildlife or game farm production and management, nor to humane use of animals or activities regulated under and in conformity with the provisions of 7 U.S.C. § 2131, *et seq.*, and the regulations promulgated thereunder, as both statutes and regulations are in effect on the effective date of this section.

W. Va. Code § 61-8-19(f) (emphasis added). In this case, no one denies that Petitioner's horses and donkey are "livestock" for purposes of subsection (f). The question is whether subsection (f) excludes the livestock at issue in this case from the protections contained in § 61-8-19.

Petitioner claims that subsection (f) *unconditionally* excludes livestock from protection under § 61-8-19, regardless of how the animals are cared for. The circuit court disagreed, concluding that subsection (f) excludes livestock only if they are "kept and maintained according to usual and accepted standards of livestock." Petitioner argues that the circuit court's conclusion was error, and she ascribes this error to a failure "to apply the correct principles of statutory construction[.]" According to Petitioner, subsection (f) is ambiguous and, therefore, must be "interpreted to be clearly understood[.]" She urges us to resolve this ambiguity by applying a "grammatical construction" to subsection (f) and, in particular, by "considering [l]egislative intent in the light of the body of law in which W. Va. Code [§] 61-8-19(f) exists." In her view, § 61-8-19(f) must be read *in pari materia* with § 7-10-4(h). We disagree.

"A statute is open to construction only where the language used requires interpretation because of ambiguity . . . ." *Hereford v. Meek*, 132 W. Va. 373, 386, 52

S.E.2d 740, 747 (1949). When we encounter a "clear and unambiguous" statute that "plainly expresses the legislative intent[,]" our role is simply to give the statute "full force and effect." Syl. Pt. 2, in part, *State v. Epperly*, 135 W. Va. 877, 65 S.E.2d 488 (1951). In such cases, our "duty . . . is not to construe but to apply the statute," assigning to "its words . . . their ordinary acceptance and significance and the meaning commonly attributed to them." *Id.* at 884, 65 S.E.2d at 492. Consistent with this duty, we refuse to apply to a "clear and unambiguous" statute the "rule that statutes which relate to the same subject should be read and construed together" because that "is a rule of statutory construction and does not apply . . . ." *Id.* at 877, 65 S.E.2d at 489, syl. pt. 1, in part.

That is not to say, however, that *no* interpretation or construction is involved when we assign statutory words their ordinary significance and meaning. "To ascertain the meaning and significance of thoughts expressed in words" is to "interpret" a writing. *Interpret*, *Black's Law Dictionary* (11th ed. 2019). Indeed, "[a]ny meaning derived from signs involves interpretation, even if the interpreter finds the task straightforward." Antonin Scalia & Bryan Garner, *Reading Law: The Interpretation of Legal Texts* 53 (2012) (footnote omitted). What we refuse to do, however, under the guise of interpretation or construction, is to "look for or impose another meaning" when the text of the statute, itself, is "plain and unambiguous and conveys a clear and definite meaning[.]" *Hereford*, 132 W. Va. at 386, 52 S.E.2d at 747 (quoting 50 Am. Jur., *Statutes*, § 225). We "presume that a legislature says in a statute what it means and means in a statute what it says there." *Connecticut Nat. Bank v. Germain*, 503 U.S. 249, 253–54 (1992).

6

In the present case, we need not read § 61-8-19(f) *in pari materia* with § 7-10-4(h), because we find that § 61-8-19(f) is clear and unambiguous. Subsection (f) excludes three parallel categories of things from the provisions of § 61-8-19:

    (a) "lawful acts of hunting, fishing, trapping or animal training";

    (b) "farm livestock, poultry, gaming fowl or wildlife kept in private or licensed game farms if kept and maintained according to usual and accepted standards of livestock, poultry, gaming fowl or wildlife or game farm production and management"; and

    (c) "humane use of animals or activities regulated under and in conformity with the provisions of 7 U.S.C. § 2131, *et seq*., and the regulations promulgated thereunder, as both statutes and regulations are in effect on the effective date of this section."

W. Va. Code § 61-8-19(f). Within the relevant middle category, subsection (f) refers to several categories of animals: "*farm livestock, poultry, gaming fowl or wildlife kept in private or licensed game farms*[.]" *Id.* (emphasis added). By the plain terms of the statute, these categories of animals are not excluded unless they are "kept and maintained according to" corresponding "standards of . . . production and management," that is, "according to usual and accepted standards of *livestock*, *poultry*, *gaming fowl* or *wildlife or game farm* production and management[.]" *Id.* (emphasis added). In context, the words in the phrase "livestock, poultry, gaming fowl or wildlife or game farm" function as adjectives that modify the nouns "production" and "management," and these adjectives plainly correspond to the immediately preceding categories of excluded animals (i.e., "farm livestock, poultry, gaming fowl or wildlife kept in private or licensed game farms"). *Id.*

7

In turn, the larger prepositional phrase, "of livestock, poultry, gaming fowl or wildlife or game farm production and management," *id.*, plainly refers back to and modifies the word "standards," and the conditional phrase that ends in "standards" (i.e., "if kept and maintained according to usual and accepted standards"), *id.*, plainly refers back to and modifies the several parallel and correspondingly ordered categories of animals. Thus, and as a matter of straightforward semantics and structure, we hold that West Virginia Code § 61-8-19(f) (eff. 2008) excludes "farm livestock" from the provisions of § 61-8-19 only if the livestock are "kept and maintained according to usual and accepted standards of livestock . . . production and management[.]"

Furthermore, we disagree with Petitioner's position that subsection (f) provides a blanket exclusion for livestock, regardless of how they are kept. To reach her desired construction, Petitioner questions the need for a livestock exclusion that is conditioned on proper care and maintenance. She asks, "if the Legislature meant to create a conditional exception for livestock, why . . . did it need to create an exception at all?"

We find nothing inconsistent about the Legislature's decision to conditionally exclude livestock (and certain other animals) from the protections contained in § 61-8-19. As one commentator has observed, "the majority of states . . . have enacted laws mandating that prosecutors, humane enforcement agencies, and the judiciary cannot examine farming practices for cruelty or animal abuse once the particular practice is demonstrated to be a customary practice of the United States farming community." David

8

J. Wolfson, *Beyond the Law: Agribusiness and the Systemic Abuse of Animals Raised for Food or Food Production*, 2 Animal L. 123, 147 (1996).

In our State, the West Virginia Commissioner of Agriculture has promulgated a "legislative rule [that] governs the care and well-being of livestock including, beef cattle, bison, veal, dairy cattle, *equine*,[5] swine, small ruminant, and poultry, and captive cervids in the State of West Virginia." W. Va. Code R. 61-31-1.1 (eff. 2022) (emphasis added). The rule addresses such topics as the watering, feeding, and housing of animals and specifies both authorized and unauthorized practices. *See, e.g.*, W. Va. Code R. § 61-31-15 (eff. 2022) (regarding equine standards of care). For instance, authorized practices for beef cattle include hot branding. W. Va. Code R. § 61-31-13.5.d.4 (eff. 2022). As the State observes, this conventional practice might plausibly qualify as cruel mistreatment, for purposes of § 61-8-19(a)(1)(A), or mutilation, for purposes of § 61-8-19(b), were it not excluded under § 61-8-19(f). This rule certainly outlines conditions in which livestock are "kept and maintained according to the usual and accepted standards of livestock."

We are likewise not persuaded by Petitioner's claim that the phrase "usual and accepted standards of livestock" in § 61-8-19(f) only modifies the phrase "wildlife kept in private or licensed game farms" and, thus, that subsection (f) only requires *wildlife* to be "kept and maintained according to usual and accepted standards of livestock, poultry,

---

[5] We note, that, under the rule, "equine" refers to "a member of the Equine genus including *horses*, ponies, mules, asses, *donkeys*, and zebras." W. Va. Code R. § 61-31-2.14 (emphasis added).

gaming fowl or wildlife[.]" *Id.* Petitioner attempts to reach this result by imposing what she refers to as a "grammatical construction" on the statute. However, Petitioner's would-be construction amounts to misguided application of "the grammatical rule of the last antecedent, 'according to which a limiting clause or phrase . . . should ordinarily be read as modifying only the noun or phrase that it immediately follows.'" *Paroline v. United States*, 572 U.S. 434, 447 (2014) (alteration in original) (quoting *Barnhart v. Thomas,* 540 U.S. 20, 26 (2003)). As *Paroline* observes, this "rule is 'not an absolute and can assuredly be overcome by other indicia of meaning.'" *Id.* Indeed, the last-antecedent rule is not to be "applied . . . in a mechanical way" that "require[s] accepting 'unlikely premises.'" *Paroline*, 572 U.S. at 447 (quoting *United States v. Hayes,* 555 U.S. 415, 425 (2009)). In this case, both context and common sense require the last-antecedent rule to yield to the rule that, "[w]hen several words are followed by a clause which is applicable as much to the first and other words as to the last, the natural construction of the language demands that the clause be read as applicable to all." *Paroline*, 572 U.S. at 447 (quoting *Porto Rico Ry., Light & Power Co. v. Mor,* 253 U.S. 345, 348 (1920)). Thus, the phrase, "if kept and maintained according to usual and accepted standards of livestock, poultry, gaming fowl or wildlife or game farm production and management," refers back to the series, "farm livestock, poultry, gaming fowl or wildlife kept in private or licensed game farms[.]" W. Va. Code § 61-8-19(f). This is the most natural construction of subsection (f) and the one that best accords with the subject matter of the exclusion.

10

Finally, to support her proposed construction, Petitioner urges us to read §
61-8-19(f) in the light of § 7-10-4(h) and, indeed, to *revise* § 61-8-19(f) by, among other
things, inserting semicolons and the words "nor to" in opportune places. This argument is
not persuasive. We presume "that the legislators who drafted and passed [§ 61-8-19(f)]
were familiar with all existing law, applicable to the subject–matter, . . . and intended the
statute to harmonize completely with the same and aid in the effectuation of the general
purpose and design thereof[.]" *Id.* However, this presumption only applies if the statute's
"terms are consistent" with other related statutes, *id.*, and the terms of § 61-8-19(f) and §
7-10-4(h) are not consistent. More importantly, because we assume that the Legislature is
familiar with both statutes, we assume that the differences between them are intended.

At one time, § 7-10-4(h) was virtually the mirror image of § 61-8-19(f). *See*
1991 W. Va. Acts 458 (amending and reenacting §§ 7-10-4 and 61-8-19).[6] However, in
2003, the Legislature began revising § 7-10-4(h) in ways that caused it to diverge, in
relevant respects, from § 61-8-19(f). First, the Legislature inserted the phrase "as defined
in subsection (d), section two, article ten-b, chapter nineteen of this code," after the comma
following "farm livestock[.]" 2003 W. Va. Acts 60.[7] Then, the Legislature further revised

---

[6] At that time, however, the counterpart to § 7-10-4(h) was located in
subsection (f); the counterpart to § 61-8-19(f) was located in subsection (e). 1991 W. Va.
Acts 461 and 463.

[7] As revised, § 7-10-4(h) provided as follows:

(continued . . .)

11

§ 7-10-4(h) by, among other things, replacing certain commas with semicolons.  *See* 2008

W. Va. Acts 57.[8]  As a result, § 7-10-4(h) came to provide as follows:

> The provisions of this section do not apply to farm livestock, as defined in subsection (d), section two, article ten-b, chapter nineteen of this code**;** poultry, gaming fowl or wildlife kept in private or licensed game farms if kept and maintained according to usual and accepted standards of livestock**;** poultry, gaming fowl, wildlife or game farm production and management**;** nor to the humane use of animals or activities regulated under and in conformity with the provisions of 7 U.S.C. § 2131, *et seq*., and the regulations promulgated thereunder.

W. Va. Code § 7-10-4 (eff. 2008) (emphasis added).  By contrast, the Legislature amended

§ 61-8-19(f) in 1995 by inserting the phrase, "lawful acts of hunting, fishing, trapping or

animal training or[,]" after "does not apply to" and before "farm livestock[.]"  1995 W. Va.

Acts 426.[9]  In all other relevant respects, however, the text of § 61-8-19(f) remains

---

> The provisions of this section do not apply to farm livestock, *as defined in subsection (d), section two, article ten-b, chapter nineteen of this code,* poultry, gaming fowl or wildlife kept in private or licensed game farms if kept and maintained according to usual and accepted standards of livestock, poultry, gaming fowl, wildlife or game farm production and management, nor to the humane use of animals or activities regulated under and in conformity with the provisions of 7 U.S.C. § 2131 et seq. and the regulations promulgated thereunder.

*Id.* (eff. 2003) (emphasis added).

[8] Although § 7-10-4 was further amended in 2009, those amendments did not affect subsection (h).

[9] At that time, subsection (f)'s counterpart was designated subsection (e).

12

unchanged, and—as noted above—we assume this was by design, especially considering that fact that § 7-10-4 is a civil statute authorizing the seizure of animals, while § 61-8-19 is a criminal statute authorizing the punishment of humans.

More importantly, it is not our place to "arbitrarily . . . read into a statute that which it does not say." Syl. Pt. 11, in part, *Brooke B. v. Ray C.*, 230 W. Va. 355, 738 S.E.2d 21 (2013). "Just as courts are not to eliminate through judicial interpretation words that were purposely included, we are obliged not to add to statutes something the Legislature purposely omitted." *Id.* Nevertheless, that is what Petitioner invites us to do when she asks us to construe § 61-8-19(f) as if it were the mirror image of § 7-10-4(h). We are not a superlegislature, and we refuse to pretend to be one. *See* Syl. Pt. 2, in part, *Huffman v. Goals Coal Co.*, 223 W. Va. 724, 679 S.E.2d 323 (2009) (stating that "[t]his Court does not sit as a superlegislature, commissioned to pass upon the political, social, economic or scientific merits of statutes pertaining to proper subjects of legislation").

## IV.  CONCLUSION

Because we hold that § 61-8-19(f) establishes an exclusion for farm livestock only when they are "kept and maintained according to usual and accepted standards of livestock . . . production and management," and because the circuit court so held, we affirm the circuit court's May 17, 2021 order granting the writ of prohibition and remand this case to the circuit court for further proceedings consistent with this opinion.

Affirmed.

13